Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7344 | **DATE** | 3/27/2002 |
| **CASE TITLE** | Commodity Futures Trading vs. Martin Brown, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held and continued to 4/24/2002 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Plaintiff's motion for leave to file amended complaint instanter is granted. By stipulation relief defendants Brown and Prairie Garden Condos, Inc. is dismissed with prejudice. Enter consent order of permanent injunction and other equitable relief against defendant Martin Brown, Geoffrey Thompson, Ydiyell Howard. Enter consent order as to relief defendant Javette King.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 2 8 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | 34 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SLB | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 MAR 27 PM 3:03 FILED-ED TO | Date/time received in central Clerk's Office | mailing deputy initials |



# IN THE UNITED STATES DISTRICT COURT
## FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) CIVIL ACTION NO. 00 C 7344 |
| Plaintiff, | ) The Honorable Judge<br>) George W. Lindberg |
| v. | ) |
| MARTIN BROWN and GEOFFREY S. THOMPSON, | ) Magistrate Judge Bobrick |
| Defendants, | ) |
| BRENDA L. BROWN, PRAIRIE GARDEN CONDOS, INC. and JAVETTE L. KING, | ) ORDER DISMISSING RELIEF<br>) DEFENDANTS BRENDA BROWN<br>) AND PRAIRIE GARDEN CONDOS,<br>) INC., AND RELEASING FUNDS |
| Relief Defendants. | ) |

## ORDER DISMISSING RELIEF DEFENDANTS BRENDA BROWN AND PRAIRIE GARDENS CONDOS, INC., AND RELEASING FUNDS

This matter coming to be heard on the Stipulation of the Plaintiff, Commodity Futures Trading Commission, and Relief Defendants Brenda Brown and Prairie Garden Condos, Inc., and the Court being fully advised;

IT IS HEREBY ORDERED:

1.    The Stipulation by the parties is approved by the Court.

34

2.    The funds and any interest earned thereon held by F.C. Stone in "The Brenda Brown Account" pursuant to this Court's order of January 9, 2001, shall be distributed to F.C. Stone for the purpose of making victim account holders whole.

3.    Relief Defendants Brenda Brown and Prairie Garden Condos, Inc., are hereby dismissed, with prejudice.

Entered: MAR 2 7 2002

Judge George W. Lindberg
U.S. District Court Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) CIVIL ACTION NO.  00 C 7344 |
| | ) |
| | ) The Honorable Judge |
| Plaintiff, | ) George W. Lindberg |
| | ) |
| v. | ) |
| | ) |
| BROWN, ET AL. | ) Magistrate Judge Bobrick |
| | ) |
| Defendants, | ) |
| | ) ATTACHMENT A |

## ATTACHMENT A
## TO CONSENT ORDERS OF PERMANENT INJUNCTION

1. The Plaintiff, Commodity Futures Trading Commission and Defendants Martin Brown, Geoffrey Thompson and Ydiyell Howard, and Relief Defendant Javette King agreed to Consent Orders of Permanent Injunction entered by the Court in the above matter. This Attachment is incorporated and made a part of each of the Consent Orders entered by the Court.

2. Of the three victim accounts, two have been made whole by Stone. Specifically, Stone reimbursed the first victim account holder $248,289 and the second victim account holder $484,235.

3. The amount of losses and the recipients of restitution for the third victim account were not determined at the time the Consent Orders were entered.

4. The CFTC will submit a proposed distribution plan to the Court for its approval when there has been a determination of the amount of losses due the third victim account holder or other parties. The Monitor will distribute restitution payments pursuant to Court Order.

IN THE UNITED STATES DISTRICT COURT ~~ORIGINAL~~
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | CIVIL ACTION NO.  00 C 7344 |
| Plaintiff, | The Honorable Judge George W. Lindberg |
| v. |  |
| MARTIN BROWN, GEOFFRY S. THOMPSON, and YDIYELL HOWARD, | Magistrate Judge Bobrick |
| Defendants, |  |
| BRENDA L. BROWN, PRAIRIE GARDEN CONDOS, INC., JAVETTE L. KING, LOREN HAYES, and BERNADETTE THOMAS, | CONSENT ORDER OF PERMANENT INJUNCTION – MARTIN BROWN |
| Relief Defendants. |  |

**CONSENT ORDER OF PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF
AGAINST DEFENDANT MARTIN BROWN**

1.     On November 21, 2000, Plaintiff, Commodity Futures Trading Commission ("Commission") filed a Complaint against Martin Brown ("Brown") and Geoffrey Thompson ("Thompson"), Defendants, and several Relief Defendants seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 *et seq.* (Supp. 2001) and regulations promulgated thereunder, 17 C.F.R. §§ *et seq.* (2000). The Court entered Consent Orders of Preliminary Injunction against Defendant Thompson on December 22, 2000 and against Defendant Brown on March 1, 2001.  The orders enjoined defendants from dissipating or disposing of any assets in their custody or control and enjoined

them from committing further violations of the Act as alleged in the complaint. On *March 27, 2002*
2002, the Commission filed a First Amended Complaint ("Complaint") adding Ydiyell Howard
("Howard") as a party defendant and naming additional Relief Defendants. The complaint
alleges, *inter alia*, that defendants Brown, Thompson and Howard fraudulently allocated
commodity interest trades by placing losing trades in customer accounts ("victim accounts") and
winning trades in the accounts of friends and relatives ("favored accounts").

2.      To effect settlement of the matters alleged in the Complaint against Brown
without a trial on the merits, Brown and the Commission consent to the entry of this Consent
Order of Permanent Injunction and other Equitable Relief Against Martin Brown ("Consent
Order"). Brown also: (1) acknowledges service of the Summons and Complaint; (2) admits both
personal and subject matter jurisdiction of this Court in this action; (3) admits that venue
properly lies with this Court; and (4) generally waives the entry of findings of fact and
conclusions of law in this action pursuant to Rule 52 of the Federal Rules of Civil Procedure,
except as provided in Part II below.

3.      By consenting to the entry of this Consent Order, Brown neither admits nor denies
any of the allegations of the Complaint except as to jurisdiction and venue. Notwithstanding the
above, Brown further agrees and the parties to this Consent Order intend that all of the findings
of fact made by the Court in this Consent Order shall be taken as true and correct and be given
preclusive effect without further proof only in any subsequent bankruptcy proceeding filed by,
on behalf of or against Brown for the purpose of determining whether the restitution and/or other
payments ordered herein are excepted from discharge. Brown shall also provide immediate
notice of any bankruptcy proceeding filed by, on behalf of or against him in the manner required
by the Notice provision of this Consent Order.

4.    Brown agrees (1) not to take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating or tending to create, the impression that the Complaint or this Consent Order is without factual basis; and (2) no agent or employee of Brown acting under Brown's authority or control shall take any action or make any statement denying, directly or indirectly, any allegation in the Complaint or creating, or tending to create, the impression that the Complaint is without factual basis and Brown shall take all steps necessary to insure that all of his agents and employees understand and comply with this agreement. Nothing in this provision affects Brown's (1) testimonial obligations; or (2) right to take legal positions in other proceedings to which the Commission is not a party.

5.    Brown waives: (1) all claims that he may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121. §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1, et seq. (2001), relating to or arising from this action and any right under EAJA to seek costs, fees and other expenses relating to or arising from this proceeding; (2) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (3) all rights of appeal from this Consent Order.

6.    The parties hereto also consent to the continued jurisdiction of the Court for the purpose of enforcing the terms and conditions of this Consent Order and for any other purposes relevant to this case.

7.    Brown agrees to cooperate fully with the Commission in its prosecution of the Complaint in this proceeding, in any ongoing investigations related to the subject matter of the

Complaint, and in all other proceedings arising from such investigations by, among other things: (1) responding promptly, completely, and truthfully to any inquiries or requests for information and otherwise cooperating fully with respect to discovery; (2) providing authentication of documents; (3) testifying completely and truthfully; and (4) not asserting privileges under the Fifth Amendment of the United States Constitution in connection with any testimony Brown is asked to provide.

8. Brown further affirms that he has read the Consent Order and agrees to entry of this Consent Order voluntarily, and that no promise or threat of any kind has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce him to consent to this Consent order, other than as set forth specifically herein.

## II.

## FINDINGS OF FACT

9. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason to delay. The Court therefore directs the entry of findings of fact, conclusions of law, a permanent injunction and ancillary equitable relief, pursuant to § 6c of the Commodity Exchange Act, as amended, 7 U.S.C. § 13a-1 (1994), as set forth herein.

10. This Court has subject matter jurisdiction over this action and the allegations in the Complaint pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (1994).

11. This Court has personal jurisdiction over Brown and Brown has acknowledged service of the Summons and Complaint and consented to the Court's jurisdiction over him.

12. The Commission and Brown have agreed that this Court shall retain jurisdiction over each of them for the purpose of enforcing the terms of this Consent Order.

## THE PARTIES AND OTHER ENTITIES

13.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged with the responsibility for administering and enforcing the provisions of the Act, as amended, 7 U.S.C. §§ 1 *et seq.* (2001), and Regulations promulgated under it, 17 C.F.R. §§ 1 *et seq.* (2001).

14.     Defendant Martin Brown, age 32, resides at 1307 S. Wabash #706, Chicago, Illinois 60605. At all relevant times, Brown was an employee of F.C. Stone, LLC ("Stone"). Brown has never been registered with the Commission in any capacity. Brown is no longer employed at Stone.

15.     F.C. Stone, LLC is registered with the Commission as a futures commission merchant ("FCM") and is a member firm of the Chicago Board of Trade, the Chicago Mercantile Exchange and the National Futures Association. It is located at Suite 2600, 141 West Jackson Blvd., Chicago, Illinois 60604. As of July 1, 2000, it succeeded Saul Stone & Company LLC and assumed the rights and responsibilities of Saul Stone under all relevant customer account agreements. At all times, the term "Stone" shall refer to both Saul Stone & Company, LLC and F.C. Stone, LLC, as its successor and assignee.

## THE ALLOCATION SCHEME

16.     During the relevant time, Brown, was employed in Stone's Futures Direct unit. Futures Direct accountholders are generally experienced traders with large accounts who are permitted to place orders for commodity interest trades directly to the floor of the exchange using, at least in some instances, execution brokers.

17.     The favored accounts of friends and relatives of the defendants were opened between February 2000 and July 2000 as Futures Direct accounts at Stone under the following

names and account numbers; Javette L. King, Brown's girlfriend, account No. 18809; Prairie

Garden Condos, Brown's sister's business, account No. 18799; Loren Hayes, Thompson's sister,

account No. 18766; Bernadette Thomas, Thompson's friend, account No. 18281; and, Michael

Clemenson, Howard's friend, account No. 18765. Brown placed commodity interest trades for

the favored accounts through execution brokers.

18.     The scheme worked as follows: Brown or one of the co-defendants placed a trade

for the benefit of one of the favored accounts. By the end of the trading day, if the trade

appeared profitable based upon subsequent market movements, Brown kept the trade in the

favored account to which it had been entered. If a trade appeared unprofitable, Brown requested

that the trade be transferred to one of several customer accounts victimized in the scheme. This

transfer would be made either a) by calling the execution broker and instructing the execution

broker to transfer the trade from the favored account to one of the victim accounts, or b) if the

trade had already been accepted from the execution broker by Stone, by asking someone at Stone

to move the trade from a favored account to a victim account.

19.     In the at least eight months that Brown perpetrated the scheme, the favored

accounts amassed in total no less than $2,324,220. The victim accounts suffered total losses of

at least $1,340,381.

20.     The victim account holders relied on the defendants to assign to them the proper

trades and to correct errors to assure that their account balances were true and correct and

accurately reflected authorized trading activity.

21.     Brown did not have specific authorization to place the trades in the victim

accounts or written authorization to place trades in those accounts without specific authorization.

22.     During all relevant times, Brown failed to disclose to the victim account holders or Stone the material fact that he was not authorized to trade on anyone's behalf or that he was allocating losing trades to victim accounts and winning or profitable trades to favored accounts.

23     Between February and October 2000, Brown and others caused transfers of the aggregate amounts of $2,010,092 from the favored accounts to bank accounts in the names of King, Prairie Garden Condos, Hayes, Thomas and Clemenson.  As a result of the fraud, King received approximately $556,000; Prairie Garden Condos received approximately $697,000; Hayes received approximately $488,317; Thomas received approximately $237,000 and the Clemenson account received approximately $61,525.

24.     Since October 27, 2000, Stone has demanded return of the illicitly obtained profits and obtained approximately $1,106,335 from Defendant Brown and Relief Defendants Prairie Garden Condos, Brenda Brown and Javette King for the benefit of the customers whose accounts were victimized in the scheme.

25.     However, since that date, neither Brown nor other Defendants or the Relief Defendants have returned the approximately $200,000 still owed to Stone's customers victimized by the scheme or the $1,200,000 in ill-gotten gains obtained by the Defendants and Relief Defendants and others as a result of the fraudulent conduct.

## III.

## CONCLUSIONS OF LAW

26.     Since at least November 1999, and continuing through October 2000, Brown violated section 4b(a)(i) and 4b(a)(iii) of the Act, 7 U.S.C. § 6b(a)(i) and § 6b(a)(iii), in that he cheated, defrauded and willfully deceived Stone customers by fraudulently allocating commodity interest contracts between favored accounts and other customer accounts without authorization.

27.     Since at least November 1999, and continuing through October 2000, Brown

violated Commission Regulation 166.2, 17 C.F.R. § 166.2, in that he effected transactions in

commodity interests for the accounts of customers before the customers, or persons designated

by the customers to control the accounts, specifically authorized the transactions or authorized in

writing the effecting of transactions for the accounts without the customers' specific

authorization in violation of Regulation 166.2, 17 C.F.R. § 166.2.

**IV.**

## ORDER FOR PERMANENT INJUNCTION

NOW THEREFORE, IT IS ORDERED THAT:

28.     Brown is permanently restrained, enjoined and prohibited from directly or

indirectly:

> a.      Cheating or defrauding or attempting to cheat or defraud or willfully
> deceiving or attempting to deceive any other person, in or in connection
> with any order to make, or the making of, any contract of sale of any
> commodity for future delivery, made, or to be made, for or on behalf of
> any other person if such contract for future delivery is or may be used for
> (a) hedging any transaction in interstate commerce in such commodity or
> the products or byproducts thereof, or (b) determining the price basis of
> any transaction in interstate commerce in such commodity, or
> (c) delivering any such commodity sold, shipped, or received in interstate
> commerce for the fulfillment thereof, in violation of Sections 4b(a)(i) and
> (iii) of the Act, 7 U.S.C. §§ 6b(a)(i) and (iii); and
>
> b.      Effecting transactions in a commodity interest for the account of any
> customer unless before the transaction the customer, or person designated
> by the customer to control the account, specifically authorizes the
> transaction or authorizes in writing the effecting of transactions in
> commodity interests for the account without the customer's specific
> authorization, in violation of Regulation 166.2, 17 C.F.R. § 166.2.

29.     Brown is further permanently restrained, enjoined and prohibited from directly or

indirectly:

a.    Engaging in, controlling or directing the trading for any futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

b.    Entering into any futures or options transactions for his own account, for any account in which he has a direct or indirect interest and/or having any futures or options traded on his behalf; and

c.    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent or officer of any person registered, exempted from registration, or required to be registered with the Commission unless such exemption is pursuant to Commission Regulation 4.14(a)(9).

30.    The injunctive provisions of this Consent Order shall be binding upon Brown, upon any person insofar as he or she is acting in the capacity of officer, agent, servant or employee of Brown, and upon any person who receives actual notice of this Consent Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Brown.

## V.

## <u>ORDER FOR OTHER EQUITABLE RELIEF</u>

IT IS FURTHER ORDERED THAT:

31.    <u>RESTITUTION</u>:

a.    <u>Restitution Obligation</u>: Brown is jointly and severally liable with Defendant Thompson for $200,000 (Two Hundred Thousand Dollars) in restitution plus pre-judgment interest thereon from October 27, 2000, to the date of this order in the amount of $*24,124.36*("Restitution Obligation"). Pre-judgment interest is calculated at the underpayment rate established by the Internal Revenue Service, pursuant to 26 U.S.C. § 662(a)(2). The Restitution Obligation represents the total amount of restitution needed to make whole the victim account holders whose accounts sustained losses of $1.3 million as a result of the fraudulent trade allocation scheme offset by the amount of pre-judgment restitution recovered. Brown shall pay post-judgment interest from the date of this

Order until his Restitution Obligation is paid in full, at the Treasury Bill rate prevailing on the date of this Order, pursuant to 28 U.S.C. § 1961(a).

b.    Brown's Restitution Obligation shall be further offset by any restitution or disgorgement payments made by any other Defendants or Relief Defendants on behalf of the victims of the fraudulent allocation scheme, until each victim account holder is made whole.

c.    <u>Victim Accounts</u>: Attachment A, attached hereto and incorporated by reference, is a listing of the victim accounts maintained at F.C. Stone. Attachment A includes, *inter alia*, the Commission's calculation of the total amount of restitution owed each victim account holder or Stone. Omission from Exhibit A shall in no way limit the ability of any victim account holder or Stone to seek recovery from any Defendant or any other person or entity. Restitution payments shall be paid in accordance with the provisions of Paragraph 33 below.

32.    <u>DISGORGEMENT</u>: Brown is ordered to disgorge $229,734 (Two Hundred Twenty Nine Thousand Seven Hundred Thirty Four Dollars), representing Brown's personal gain from the conduct alleged in the Complaint. Payments made by Brown towards his Restitution Obligation shall reduce the amount of disgorgement dollar for dollar.

33.    <u>PAYMENT OF RESTITUTION OBLIGATION AND DISGORGEMENT</u>:

Restitution and disgorgement shall be made as follows:

a.    The balance of funds in account number 801-058061-9, held in the name of Martin Brown and account number 801-065161-6, held in the name of Martin Brown or Kimberly M. Mason, and account number 846-201980-6, held in the name of Martin Brown or Javette L. King, at Charter One Bank (formerly St. Paul Federal), 6700 W. North Ave., Chicago, Illinois 60707, shall be transferred with Brown's cooperation to an account designated by the Monitor, as described in Paragraph 33c below, within ten days of the date this Order is entered by the Court. The Monitor shall distribute the payment in accordance with Attachment A and any applicable court order. Such distribution shall reduce Brown's Restitution Obligation on a dollar-for-dollar basis.

b.    Brown shall make an annual restitution obligation/disgorgement payment ("Annual Restitution/Disgorgement Payment") to an account designated by the Monitor of: (1) a percentage of his adjusted gross income (as defined by the Internal Revenue Code) earned or received by him during the previous calendar year, plus (2) all other cash receipts, cash

entitlements or proceeds of non-cash assets received by him during the previous calendar year pursuant to the payment plan outlined in Paragraph 35 below. The Annual Restitution/Disgorgement Payment shall be made on or before July 31 of each calendar year starting in calendar year 2002 and continuing for ten years or until the Restitution Obligation and Disgorgement is paid in full from any source or discharged, whichever occurs sooner. The ten year period for determining the Annual Restitution/Disgorgement Payments shall run from January 1, 2001 through December 31, 2010. Annual Restitution/Disgorgement Payments for a calendar year shall take place by July 31 of the following year. Therefore, the final annual payment for the year 2010 will occur on or before July 31, 2011.

c.     Brown agrees that the National Futures Association is hereby designated as the Monitor for a period of eleven years commencing January 1, 2001. Notice to the Monitor shall be made to Daniel A. Driscoll, Esq., Executive Vice President, Chief Compliance Officer, or his successor, at the following address: National Futures Association, 200 West Madison Street, Chicago, Illinois 60606.

d.     Brown shall provide a sworn financial statement to the Monitor on June 30 and December 31 of each calendar year, starting June 30, 2002 and continuing through and including June 2011. The financial statement shall provide;

i).     a true and complete itemization of all of his rights, title and interest in (or claimed in) any asset, wherever located, however and by whomever held;

ii).     an itemization, description and explanation of all transfers of assets with a value of $1,000 or more made by or on behalf of him over the preceding six-month interval; and

iii).     a detailed description of the source and amount of all his income or earnings, however generated.

Brown shall also provide the Monitor with complete copies of his signed federal income tax returns, including all schedules and attachments thereto (*e.g.*, IRS Forms W-2) and Forms 1099, as well as any filings he is required to submit to any state tax or revenue authority, for the preceding calendar year, on or before June 30 of each calendar year, or as soon thereafter as the same are filed, starting in calendar year 2002 and continuing for ten years or until all amounts due under this agreement are paid in full or discharged, whichever occurs first.

e.  If, during the same time period, Brown elects to file a joint tax return, he shall provide all documents called for by this paragraph 33, including the signed and filed joint tax return, plus a draft individual tax return prepared on IRS Form 1040 containing a certification by a licensed certified public accountant that the "Income" section (currently lines 7-22 of Form 1040) truly, accurately and completely reflects all of Brown's income, that the "Adjusted Gross Income" section truly, accurately and completely identifies all deductions that Brown has a right to claim, and that the deductions contained in the "Adjusted Gross Income" section are equal to or less than 50% of the deductions that Brown is entitled to claim on the joint tax return; provided however that Brown may claim 100% of the deductions contained in the "Adjusted Gross Income" section that are solely his. Such individual tax return shall include all schedules and attachments thereto (*e.g.*, IRS Forms W-2) and Forms 1099, as well as any filing required to be submitted to any state tax or revenue authority.

f.  Based on the information contained in Brown's tax returns, Brown's sworn Financial Disclosure Statement and other financial records provided to the Commission, the Monitor shall calculate the Annual Restitution/Disgorgement Payment to be paid by Brown for that year. Thereafter, the Monitor shall distribute the payment in accordance with Attachment A and any applicable court order. On or before June 30 of each year and starting in calendar year 2002, the Monitor shall send written notice to Brown with instructions to pay the Annual Restitution/Disgorgement Payment on or before July 31 of that year to an account designated by the Monitor, or, if Brown's Restitution Obligation and/or disgorgement has been satisfied or discharged, the amount of civil monetary penalty to be paid in accordance with the payment instructions in Paragraphs 34 and 35 below. If the Monitor determines that an Annual Restitution/Disgorgement Payment is due, then the Monitor will increase the amount of the remaining Annual Restitution/Disgorgement Payment by post-judgment interest calculated to the date of the payment based on the total remaining Restitution Obligation and Disgorgement, pursuant to 28 U.S.C. § 1961. The Monitor shall then disburse any payment by Brown in accordance with Attachment A. Based upon the amount of funds available, the Monitor may decide to defer distribution. If at the end of the ten year payment period, any amount of the Annual Restitution/Disgorgement Payments has not been distributed, that amount shall instead be paid and applied as payment to the civil monetary penalty obligation, as provided in Paragraph 34 below.

34.  CIVIL MONETARY PENALTY :

Brown shall pay a contingent civil monetary penalty in an amount up to $229,734 (Two Hundred Twenty-Nine Thousand Seven Hundred Thirty Four Dollars) pursuant to the payment

plan outlined in Paragraph 35 below, commencing upon Brown's fulfillment or discharge of his

Annual Restitution/Disgorgement Payment obligation as set forth in Paragraphs 31 through 33

above. Brown shall make an annual civil monetary penalty payment ("Annual CPM Payment")

following Brown's satisfaction or discharge of his Restitution/Disgorgement Obligation, and

continuing until July 31, 2011 (or until the CMP is paid in full, if that happens first). [1] Brown

shall make each such Annual CMP Payment by electronic funds transfer, or by U.S. postal

money order, certified check, bank cashiers check, or bank money order, made payable to the

Commodity Futures Trading Commission, and sent to Dennese Posey, or her successor, Division

of Trading and Markets, Commodity Futures Trading Commission, Three Lafayette Centre, 1155

21st Street, NW Washington, D.C. 20581, under cover of a letter that identifies Brown and the

name and docket number of the proceeding. Brown shall simultaneously transmit a copy of the

cover letter and the form of payment to the Monitor and to the Director, Division of

Enforcement, Commodity Futures Trading Commission, at the following address: 1155 21st

Street, NW, Washington, D.C. 20581.

35.    ANNUAL PAYMENT: The Annual Payments (the Annual Restitution/

Disgorgement Payment followed by the Annual CMP Payment) shall be calculated as follows:

| Where Adjusted Gross Income Plus Net Cash Receipts Total: | Percent of total to be paid by Brown in accordance with Attachment A is: |
|---|---|
| Under $25,000.00 | 0% |
| $25,000.00 up to and including $50,000.00 | 20% of the amount between $25,000.00 and $50,000 |

---

[1]    Should the amount due under the payment plan for any Annual Restitution/Disgorgement Payment be greater than the balance due on Brown's restitution/disgorgement obligation, the amount due under the payment plan not paid as restitution/disgorgement will constitute Brown's first Annual CMP Payment and be paid as specified above.

| | |
|---|---|
| $50,000.00 up to and including $100,000 | $5,000.00 (which represents 20% of the amount between $25,000.00 and $50,000.00) plus 30% of the amount between $50,000.00 and $100,000. |
| Above $100,000 | $20,000.00 (which represents 20% of the amount between $25,000.00 and $50,000.00 plus 30% of the amount between $50,000.00 and $100,000) plus 40% of the amount above $100,000. |

36.    Cooperation:  Brown shall cooperate fully and expeditiously with the Monitor and the Commission in carrying out all duties with respect to his Annual Restitution/Disgorgement Payments and Annual CMP Payments.  He shall cooperate fully with the Monitor and the Commission in explaining his financial income and earnings, status of assets, financial statements, asset transfers and tax returns, and shall provide any information concerning himself as may be required by the Commission and/or the Monitor.  Furthermore, Brown shall provide such additional information and documents with respect thereto as may be requested by the Commission and/or the Monitor.

37.    Collateral Agreements:  Brown shall immediately notify the Commission if he makes or has previously made any agreement with any victim account holder obligating him to make payments outside of this order.  Brown shall also provide immediate evidence of any payments made pursuant to such agreement in the manner required by Paragraph 41.  Upon being notified of any payments made by Brown to victim account holders outside of this Order, the Commission and the Monitor will have the right to reduce and offset Brown's obligation to specified victim account holders, on an annual basis, and to make any other changes in the restitution distribution that they deem appropriate.

14

38. <u>Default</u>: Any failure by Brown to carry out any of the terms, conditions or obligations under any paragraph of this Consent Order shall constitute an Event of Default. If any Event of Default occurs the Commission (or its designee) shall be entitled to:

   a. an order requiring immediate payment of any unpaid Restitution/Disgorgement Payment and/or Annual CMP Payments, or, at the Commission's option, the entire unpaid balance, or any unpaid portion, of the Restitution Obligation, the Disgorgement amount and/or civil monetary penalty set forth in Paragraphs 31 through 35 above; and/or

   b. move the Court for imposition of all other available remedies, including, but not limited to, an order holding Brown in contempt for violation of this Order.

Upon the occurrence of an Event of Default based upon a claim or cause of action that Brown failed to make any Annual Restitution/Disgorgement Payments and/or Annual CMP Payments when due, Brown will be barred from asserting any defense, including expiration of any statute of limitations, waiver, estoppel or laches, where such defense is based on the alleged failure of the Commission to pursue such claims or causes of action during the pendency of this civil action, during the negotiation of Brown's consent to this Order or while this Order remains in effect. The only issue that Brown may raise in defense is whether he made the Annual Restitution/Disgorgement Payments and/or Annual CMP Payment as directed by the Monitor. Any motion by the Commission for entry of an order pursuant to this paragraph requiring payment of less than the full amount of the restitution/disgorgement obligation and/or civil monetary penalty, set forth in paragraphs 31 through 35 above, or any acceptance by the Commission of partial payment of the Annual Restitution/Disgorgement Payments and/or Annual CMP Payments made by Brown shall not be deemed a waiver of the Commission's right to require Brown to make further payments pursuant to the payment plans set forth above, or, in the event of a further Event of Default, a waiver of the Commission's right to require immediate

payment of the entire remaining balance, or any unpaid portion, of the restitution/disgorgement amount and/or civil monetary penalty set forth in paragraphs 31 through 35 above.

39.    Reliance on Financial Disclosure:    Based upon the sworn representations of Brown contained in his Financial Disclosure Statement dated November 11, 2001, and other evidence provided by Brown regarding his financial condition, the Court is not ordering immediate payment of full restitution, disgorgement or the CMP pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 and Rule 143.8 of the Commission's Regulations, 17 C.F.R. § 143.8. The determination not to order immediate payment of the full amount of restitution owed, the disgorgement amount and the CMP is contingent upon the accuracy and completeness of the Financial Disclosure Statement and other evidence provided by Brown regarding his financial condition.  If at any time following the entry of this Consent Order, the Commission obtains information indicating that Brown's representations to the Commission concerning his financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may move this Court for an order requiring Brown to make immediate payment of his entire Restitution obligation, disgorgement and/or the CMP, or of any portion thereof, the amount of which shall be determined by the Commission.  In connection with any such motion, the only issues shall be whether the financial information provided by Brown was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made.  In its motion, the Commission may move this Court to consider all available remedies, including, but not limited to ordering Brown to pay funds or transfer assets or directing the forfeiture of any assets and  the Commission may also request additional discovery.  Brown may not, by way of defense to such motion, challenge the validity of his consent to this Consent order, or contest any of the findings

of fact or conclusions of law set forth in this Consent Order, assert that payment of the Restitution Obligation, the disgorgement amount, or the CMP amount should not be ordered, or contest the amount of the Restitution Obligation, the disgorgement amount or the CMP amount to be paid. If in such motion the Commission moves for, and the Court orders, payment of less than the full amount of the Restitution Obligation, disgorgement amount or the full amount of the CMP, such motion will not be deemed a waiver of the Commission's right to require Brown to make further payment pursuant to the payment plans set forth above.

40.     Transfer of Assets:  Brown shall not transfer or cause others to transfer funds or other property to the custody, possession or control of any members of his family or any other person for the purpose of concealing such funds from the Court or the Commission until the total Restitution obligation, disgorgement and CMP are paid in full.

## VI.

## MISCELLANEOUS PROVISIONS

41.     Notices:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

        If prior to March 15, 2002, then to:

        Regional Counsel
        Division of Enforcement – Central Region
        Commodity Futures Trading Commission
        300 South Riverside Plaza, Suite 1600 N
        Chicago, Illinois 60606

        If after March 15, 2002, then to:

        Regional Counsel
        Division of Enforcement – Central Region
        Commodity Futures Trading Commission
        525 W. Monroe, Suite 1100

Chicago, Illinois 60606

Notice to Brown:

      c/o Theodore Poulos, Esq.
      Cotsirilos, Tighe & Streicker, Ltd.
      33 N. Dearborn Street, Suite 600
      Chicago, Illinois 60602

Notice to Monitor:
      Daniel Driscoll
      Vice President, Compliance
      National Futures Assocation
      200 West Madison Street
      Chicago, Illinois 60606

In the event that Brown changes his residential or business telephone number(s) and/or address(es) at any time, he shall provide written notice of his new number(s) and/or address(es) to Theodore Poulos and to the Commission within ten (10) calendar days thereof.

42.    Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

43.    Waiver:  The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

44.    Successors and Assigns:  This Consent Order shall inure to the benefit of and be binding upon the successors, assigns, heirs, beneficiaries and administrators of the parties hereto.

45. Acknowledgements: Upon being served with copies of this Consent Order after entry by the Court, Brown shall sign acknowledgements of such service and serve such acknowledgments on this Court and the Commission within seven (7) calendar days.

46. Invalidation: If any provision of this Consent Order, or the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provision to any other person or circumstance shall not be effected by the holding.

47. Jurisdiction: This Court shall retain jurisdiction of this cause to assure compliance with this Consent Order and for all other purposes related to this action.

ENTERED THIS _____ of __MAR 2 7 2002_____, 200__.


Hon. George W. Lindberg
United States District Court Judge


Consented to and
approved for entry by:


Martin Brown


Theodore T. Poulos
Cotsirilos, Tighe & Streicker, LTD
33 N. Dearborn St., Suite 1600
Chicago, IL 60602
Attorney for the Defendant


Ava Gould, Trial Attorney
David A. Terrell, Senior Trial Attorney
Elizabeth M. Streit, Senior Trial Attorney
Scott R. Williamson, Deputy Regional Counsel,
Commodity Futures Trading Commission

Ava M. Gould
Commodity Futures Trading Commission
525 W. Monroe, Suite 1100
Chicago, Illinois 60661
Phone: (312) 596-0535
Fax:   (312) 596-0714

19

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) | CIVIL ACTION NO. 00 C 7344 |
| | ) | |
| | ) | **The Honorable Judge** |
| Plaintiff, | ) | **George W. Lindberg** |
| | ) | |
| v. | ) | |
| | ) | |
| BROWN, ET AL. | ) | **Magistrate Judge Bobrick** |
| | ) | |
| Defendants, | ) | |
| | ) | **ATTACHMENT A** |

## ATTACHMENT A
## TO CONSENT ORDERS OF PERMANENT INJUNCTION

1.    The Plaintiff, Commodity Futures Trading Commission and Defendants Martin Brown, Geoffrey Thompson and Ydiyell Howard, and Relief Defendant Javette King agreed to Consent Orders of Permanent Injunction entered by the Court in the above matter. This Attachment is incorporated and made a part of each of the Consent Orders entered by the Court.

2.    Of the three victim accounts, two have been made whole by Stone. Specifically, Stone reimbursed the first victim account holder $248,289 and the second victim account holder $484,235.

3.    The amount of losses and the recipients of restitution for the third victim account were not determined at the time the Consent Orders were entered.

4.    The CFTC will submit a proposed distribution plan to the Court for its approval when there has been a determination of the amount of losses due the third victim account holder or other parties. The Monitor will distribute restitution payments pursuant to Court Order.

ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) CIVIL ACTION NO. 00 C 7344 |
| | ) |
| Plaintiff, | ) The Honorable Judge |
| | ) George W. Lindberg |
| v. | ) |
| | ) |
| MARTIN BROWN, GEOFFREY S. THOMPSON, and YDIYELL HOWARD, | ) Magistrate Judge Bobrick |
| | ) |
| Defendants, | ) |
| | ) CONSENT ORDER OF PERMANENT |
| BRENDA L. BROWN, PRAIRIE GARDEN CONDOS, INC., JAVETTE L. KING, LOREN HAYES, and BERNADETTE THOMAS, | ) INJUNCTION – GEOFFREY THOMPSON |
| | ) |
| | ) |
| | ) |
| Relief Defendants. | ) |
| | ) |

### CONSENT ORDER OF PERMANENT INJUNCTION
### AND OTHER EQUITABLE RELIEF
### AGAINST DEFENDANT GEOFFREY THOMPSON

1.     On November 21, 2000, Plaintiff, Commodity Futures Trading Commission ("Commission") filed a Complaint against Martin Brown ("Brown") and Geoffrey Thompson ("Thompson"), Defendants, and several Relief Defendants seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 *et seq.* (Supp. 2001) and regulations promulgated thereunder, 17 C.F.R. §§ *et seq.* (2000). The Court entered Consent Orders of Preliminary Injunction against Defendant Thompson on December 22, 2000 and against Defendant Brown on March 1, 2001. The orders enjoined defendants from dissipating or disposing of any assets in their custody or control and enjoined

them from committing further violations of the Act as alleged in the complaint.  On *March 27*, 2002, the Commission filed a First Amended Complaint ("Complaint") adding Ydiyell Howard ("Howard") as a party defendant and naming additional Relief Defendants.  The complaint alleges, *inter alia*, that defendants Brown, Thompson and Howard fraudulently allocated commodity interest trades by placing losing trades in customer accounts ("victim accounts") and winning trades in the accounts of friends and relatives ("favored accounts").

2.  To effect settlement of the matters alleged in the Complaint against Thompson without a trial on the merits, Thompson and the Commission consent to the entry of this Consent Order of Permanent Injunction and other Equitable Relief Against Geoffrey Thompson ("Consent Order").  Thompson also: (1) acknowledges service of the Summons and Complaint; (2) admits both personal and subject matter jurisdiction of this Court in this action; (3) admits that venue properly lies with this Court; and (4) generally waives the entry of findings of fact and conclusions of law in this action pursuant to Rule 52 of the Federal Rules of Civil Procedure, except as provided in Part II below.

3.  By consenting to the entry of this Consent Order, Thompson neither admits nor denies any of the allegations of the Complaint except as to jurisdiction and venue. Notwithstanding the above, Thompson further agrees and the parties to this Consent Order intend that all of the findings of fact made by the Court in this Consent Order shall be taken as true and correct and be given preclusive effect without further proof only in any subsequent bankruptcy proceeding filed by, on behalf of or against Thompson for the purpose of determining whether the restitution and/or other payments ordered herein are excepted from discharge.  Thompson shall also provide immediate notice of any bankruptcy proceeding filed by, on behalf of or against him in the manner required by the Notice provision of this Consent Order.

4.     Thompson agrees (1) not to take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating or tending to create, the impression that the Complaint or this Consent Order is without factual basis; and (2) no agent or employee of Thompson acting under Thompson's authority or control shall take any action or make any statement denying, directly or indirectly, any allegation in the Complaint or creating, or tending to create, the impression that the Complaint is without factual basis and Thompson shall take all steps necessary to insure that all of his agents and employees understand and comply with this agreement.  Nothing in this provision affects Thompson's (1) testimonial obligations; or (2) right to take legal positions in other proceedings to which the Commission is not a party.

5.     Thompson waives: (1) all claims that he may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121. §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1, et seq. (2001), relating to or arising from this action and any right under EAJA to seek costs, fees and other expenses relating to or arising from this proceeding; (2) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (3) all rights of appeal from this Consent Order.

6.     The parties hereto also consent to the continued jurisdiction of the Court for the purpose of enforcing the terms and conditions of this Consent Order and for any other purposes relevant to this case.

7.     Thompson agrees to cooperate fully with the Commission in its prosecution of the Complaint in this proceeding, in any ongoing investigations related to the subject matter of the

Complaint, and in all other proceedings arising from such investigations by, among other things: (1) responding promptly, completely, and truthfully to any inquiries or requests for information and otherwise cooperating fully with respect to discovery; (2) providing authentication of documents; (3) testifying completely and truthfully; and (4) not asserting privileges under the Fifth Amendment of the United States Constitution in connection with any testimony Thompson is asked to provide.

8.     Thompson further affirms that he has read the Consent Order and agrees to entry of this Consent Order voluntarily, and that no promise or threat of any kind has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce him to consent to this Consent Order, other than as set forth specifically herein.

## II.

## FINDINGS OF FACT

9.     The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason to delay. The Court therefore directs the entry of findings of fact, conclusions of law, a permanent injunction and ancillary equitable relief, pursuant to § 6c of the Commodity Exchange Act, as amended, 7 U.S.C. § 13a-1 (1994), as set forth herein.

10.     This Court has subject matter jurisdiction over this action and the allegations in the Complaint pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (1994).

11.     This Court has personal jurisdiction over Thompson and Thompson has acknowledged service of the Summons and Complaint and consented to the Court's jurisdiction over him.

12.     The Commission and Thompson have agreed that this Court shall retain jurisdiction over each of them for the purpose of enforcing the terms of this Consent Order.

## THE PARTIES AND OTHER ENTITIES

13.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged with the responsibility for administering and enforcing the provisions of the Act, as amended, 7 U.S.C. §§ 1 *et seq.* (2001), and Regulations promulgated under it, 17 C.F.R. §§ 1 *et seq.* (2001).

14.     Defendant Geoffrey Thompson, age 29, resides at 5434 Prairie Ave., Unit 1 S, Chicago, Illinois 60615. From March 6, 1996, until September 26, 2000, Thompson was an officer and employee of Stone or its predecessor corporation, Saul Stone LLC ("Saul Stone"). From March 6, 1996, until September 26, 2000, Thompson was registered with the Commission as an associated person ("AP") of Stone or Saul Stone pursuant to Section 4k of the Act, 7 U.S.C. § 6k (2001). Thompson is not currently registered with the Commission in any capacity.

15.     F.C. Stone, LLC is registered with the Commission as a futures commission merchant ("FCM") and is a member firm of the Chicago Board of Trade, the Chicago Mercantile Exchange and the National Futures Association. It is located at Suite 2600, 141 West Jackson Blvd., Chicago, Illinois 60604. As of July 1, 2000, it succeeded Saul Stone & Company LLC and assumed the rights and responsibilities of Saul Stone under all relevant customer account agreements. At all times, the term "Stone" shall refer to both Saul Stone & Company, LLC and F.C. Stone, LLC, as its successor and assignee.

## THE ALLOCATION SCHEME

16.     During the relevant time, Thompson, was the Risk Manager and an Executive Vice President of F.C. Stone. He was the supervisor of the Futures Direct unit. Futures Direct accountholders are generally experienced traders with large accounts who are permitted to place orders for commodity interest trades directly to the floor of the exchange using, at least in some instances, execution brokers.

17.     The favored accounts of friends and relatives of the defendants were opened between February 2000 and July 2000 as Futures Direct accounts at Stone under the following names and account numbers; Javette L. King, Brown's girlfriend, account No. 18809; Prairie Garden Condos, Brown's sister's business, account No. 18799; Loren Hayes, Thompson's sister, account No. 18766; Bernadette Thomas, Thompson's friend, account No. 18281; and, Michael Clemenson, Howard's friend, account No. 18765. Thompson placed commodity interest trades for the favored accounts through execution brokers.

18.     The scheme worked as follows: Thompson or one of the co-defendants placed a trade for the benefit of one of the favored accounts. By the end of the trading day, if the trade appeared profitable based upon subsequent market movements, Thompson or one of the co-defendants kept the trade in the favored account to which it had been entered. If a trade appeared unprofitable, Thompson requested that the trade be transferred to one of several customer accounts victimized in the scheme. This transfer would be made either a) by calling the execution broker and instructing the execution broker to transfer the trade from the favored account to one of the victim accounts, or b) if the trade had already been accepted from the execution broker by Stone, by asking someone at Stone to move the trade from a favored account to a victim account.

6

19.     In the at least eight months that Thompson perpetrated the scheme, the favored accounts amassed in total no less than $2,324,220. The victim accounts suffered total losses of at least $1,340,381.

20.     The victim account holders relied on the defendants to assign to them the proper trades and to correct errors to assure that their account balances were true and correct and accurately reflected authorized trading activity.

21.     Thompson did not have specific authorization to place the trades in the victim accounts or written authorization to place trades in those accounts without specific authorization.

22.     During all relevant times, Thompson failed to disclose to the victim account holders or Stone the material fact that he was not authorized to trade on anyone's behalf or that he was allocating losing trades to victim accounts and winning or profitable trades to favored accounts.

23      Between February and October 2000, Thompson and others caused transfers of the aggregate amounts of $2,010,092 from the favored accounts to bank accounts in the names of King, Prairie Garden Condos, Hayes, Thomas and Clemenson. As a result of the fraud, King received approximately $556,000; Prairie Garden Condos received approximately $697,000; Hayes received approximately $488,317; Thomas received approximately $237,000 and the Clemenson account received approximately $61,525.

24.     Since October 27, 2000, Stone has demanded return of the illicitly obtained profits and obtained approximately $1,106,335 from Defendant Brown and Relief Defendants Prairie Garden Condos, Brenda Brown and Javette King for the benefit of the customers whose accounts were victimized in the scheme. Thompson has not returned any funds to Stone.

7

25.     However, since that date, neither Thompson nor other Defendants or the Relief Defendants have returned the approximately $200,000 still owed to Stone's customers victimized by the scheme or the $1,200,000 in ill-gotten gains obtained by the Defendants and Relief Defendants and others as a result of the fraudulent conduct.

## III.

## CONCLUSIONS OF LAW

26.     Since at least November 1999, and continuing through October 2000, Thompson violated section 4b(a)(i) and 4b(a)(iii) of the Act, 7 U.S.C. § 6b(a)(i) and § 6b(a)(iii), in that he cheated, defrauded and willfully deceived Stone customers by fraudulently allocating commodity interest contracts between favored accounts and other customer accounts without authorization.

27.     Since at least November 1999, and continuing through September 2000, Thompson violated Commission Regulation 166.2, 17 C.F.R. § 166.2, in that he effected transactions in commodity interests for the accounts of customers before the customers, or persons designated by the customers to control the accounts, specifically authorized the transactions or authorized in writing the effecting of transactions for the accounts without the customers' specific authorization in violation of Regulation 166.2, 17 C.F.R. § 166.2.

## IV.

## ORDER FOR PERMANENT INJUNCTION

NOW THEREFORE, IT IS ORDERED THAT:

28.     Thompson is permanently restrained, enjoined and prohibited from directly or indirectly:

        a.      Cheating or defrauding or attempting to cheat or defraud or willfully deceiving or attempting to deceive any other person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of

any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof, in violation of Sections 4b(a)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(i) and (iii); and

b.      Effecting transactions in a commodity interest for the account of any customer unless before the transaction the customer, or person designated by the customer to control the account, specifically authorizes the transaction or authorizes in writing the effecting of transactions in commodity interests for the account without the customer's specific authorization, in violation of Regulation 166.2, 17 C.F.R. § 166.2.

29.      Thompson is further permanently restrained, enjoined and prohibited from directly or indirectly:

a.      Engaging in, controlling or directing the trading for any futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

b.      Entering into any futures or options transactions for his own account, for any account in which he has a direct or indirect interest and/or having any futures or options traded on his behalf; and

c.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent or officer of any person registered, exempted from registration, or required to be registered with the Commission unless such exemption is pursuant to Commission Regulation 4.14(a)(9).

30.      The injunctive provisions of this Consent Order shall be binding upon Thompson, upon any person insofar as he or she is acting in the capacity of officer, agent, servant or employee of Thompson, and upon any person who receives actual notice of this Consent Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Thompson.

**V.**

## ORDER FOR OTHER EQUITABLE RELIEF

IT IS FURTHER ORDERED THAT:

31.  RESTITUTION:

    a.    Restitution Obligation: Thompson is jointly and severally liable with Defendant Brown for $200,000 (Two Hundred Thousand Dollars) in restitution plus pre-judgment interest thereon from October 27, 2000, to the date of this order in the amount of $_____ ("Restitution Obligation"). Pre-judgment interest is calculated at the underpayment rate established by the Internal Revenue Service, pursuant to 26 U.S.C. § 662(a)(2). The Restitution Obligation represents the total amount of restitution needed to make whole the victim account holders whose accounts sustained losses of $1.3 million as a result of the fraudulent trade allocation scheme offset by the amount of pre-judgment restitution recovered. Thompson shall pay post-judgment interest from the date of this Order until his Restitution Obligation is paid in full, at the Treasury Bill rate prevailing on the date of this Order, pursuant to 28 U.S.C. § 1961(a).

    b.    Thompson's Restitution Obligation shall be further offset by any restitution or disgorgement payments made by any other Defendants or Relief Defendants on behalf of the victims of the fraudulent allocation scheme, until each victim account holder is made whole.

    c.    Victim Accounts: Attachment A, attached hereto and incorporated by reference, is a listing of the victim accounts maintained at F.C. Stone. Attachment A includes, *inter alia*, the Commission's calculation of the total amount of restitution owed each victim account holder or Stone. Omission from Exhibit A shall in no way limit the ability of any victim account holder or Stone to seek recovery from any Defendant or any other person or entity. Restitution payments shall be paid in accordance with the provisions of Paragraph 33 below.

32.  DISGORGEMENT: Thompson is ordered to disgorge $297,937 (Two Hundred Ninety Seven Thousand Nine Hundred Thirty Seven Dollars), representing Thompson's personal gain from the conduct alleged in the Complaint. Payments made by Thompson towards his Restitution Obligation shall reduce the amount of disgorgement dollar for dollar.

33.  PAYMENT OF RESTITUTION OBLIGATION AND DISGORGEMENT:

Restitution and disgorgement shall be made as follows:

a.  The balance of funds in account number 1110018545784, held in the name of Geoffrey S. Thompson at Bank One, One Bank One Plaza, Chicago, Illinois 60670, shall be transferred with Thompson's cooperation to an account designated by the Monitor, as described in Paragraph 33c below, within ten days of the date this Order is entered by the Court. The Monitor shall distribute the payment in accordance with Attachment A and any applicable court order. Such distribution shall reduce Thompson's Restitution Obligation on a dollar-for-dollar basis.

b.  Thompson shall make an annual restitution obligation/disgorgement payment ("Annual Restitution/Disgorgement Payment") to an account designated by the Monitor of: (1) a percentage of his adjusted gross income (as defined by the Internal Revenue Code) earned or received by him during the previous calendar year, plus (2) all other cash receipts, cash entitlements or proceeds of non-cash assets received by him during the previous calendar year pursuant to the payment plan outlined in Paragraph 35 below. The Annual Restitution/Disgorgement Payment shall be made on or before July 31 of each calendar year starting in calendar year 2002 and continuing for ten years or until the Restitution Obligation and Disgorgement is paid in full from any source or discharged, whichever occurs sooner. The ten year period for determining the Annual Restitution/Disgorgement Payments shall run from January 1, 2001 through December 31, 2010. Annual Restitution/Disgorgement Payments for a calendar year shall take place by July 31 of the following year. Therefore, the final annual payment for the year 2010 will occur on or before July 31, 2011.

c.  Thompson agrees that the National Futures Association is hereby designated as the Monitor for a period of eleven years commencing January 1, 2001. Notice to the Monitor shall be made to Daniel A. Driscoll, Esq., Executive Vice President, Chief Compliance Officer, or his successor, at the following address: National Futures Association, 200 West Madison Street, Chicago, Illinois 60606.

d.  Thompson shall provide a sworn financial statement to the Monitor on June 30 and December 31 of each calendar year, starting June 30, 2002 and continuing through and including June 2011. The financial statement shall provide;

  i).  a true and complete itemization of all of his rights, title and interest in (or claimed in) any asset, wherever located, however and by whomever held;

  ii).  an itemization, description and explanation of all transfers of assets with a value of $1,000 or more made by or on behalf of him over the preceding six-month interval; and

11

iii).    a detailed description of the source and amount of all his income or earnings, however generated.

Thompson shall also provide the Monitor with complete copies of his signed federal income tax returns, including all schedules and attachments thereto (*e.g.*, IRS Forms W-2) and Forms 1099, as well as any filings he is required to submit to any state tax or revenue authority, for the preceding calendar year, on or before June 30 of each calendar year, or as soon thereafter as the same are filed, starting in calendar year 2002 and continuing for ten years or until all amounts due under this agreement are paid in full or discharged, whichever occurs first.

e.    If, during the same time period, Thompson elects to file a joint tax return, he shall provide all documents called for by this paragraph 33, including the signed and filed joint tax return, plus a draft individual tax return prepared on IRS Form 1040 containing a certification by a licensed certified public accountant that the "Income" section (currently lines 7-22 of Form 1040) truly, accurately and completely reflects all of Thompson's income, that the "Adjusted Gross Income" section truly, accurately and completely identifies all deductions that Thompson has a right to claim, and that the deductions contained in the "Adjusted Gross Income" section are equal to or less than 50% of the deductions that Thompson is entitled to claim on the joint tax return; provided however that Thompson may claim 100% of the deductions contained in the "Adjusted Gross Income" section that are solely his. Such individual tax return shall include all schedules and attachments thereto (*e.g.*, IRS Forms W-2) and Forms 1099, as well as any filing required to be submitted to any state tax or revenue authority.

f.    Based on the information contained in Thompson's tax returns, Thompson's sworn Financial Disclosure Statement and other financial records provided to the Commission, the Monitor shall calculate the Annual Restitution/Disgorgement Payment to be paid by Thompson for that year. Thereafter, the Monitor shall distribute the payment in accordance with Attachment A and any applicable court order. On or before June 30 of each year and starting in calendar year 2002, the Monitor shall send written notice to Thompson with instructions to pay the Annual Restitution/Disgorgement Payment on or before July 31 of that year to an account designated by the Monitor, or, if Thompson's Restitution Obligation and/or disgorgement has been satisfied or discharged, the amount of civil monetary penalty to be paid in accordance with the payment instructions in Paragraphs 34 and 35 below. If the Monitor determines that an Annual Restitution/Disgorgement Payment is due, then the Monitor will increase the amount of the remaining Annual Restitution/Disgorgement Payment by post-judgment interest calculated to

the date of the payment based on the total remaining Restitution Obligation and Disgorgement, pursuant to 28 U.S.C. § 1961. The Monitor shall then disburse any payment by Thompson in accordance with Attachment A. Based upon the amount of funds available, the Monitor may decide to defer distribution. If at the end of the ten year payment period, any amount of the Annual Restitution/Disgorgement Payments has not been distributed, that amount shall instead be paid and applied as payment to the civil monetary penalty obligation, as provided in Paragraph 34 below.

34.    CIVIL MONETARY PENALTY :

Thompson shall pay a contingent civil monetary penalty in an amount up to $297,937 (Two Hundred Ninety Seven Thousand Nine Hundred Thirty Seven Dollars), pursuant to the payment plan outlined in Paragraph 35 below, commencing upon Thompson's fulfillment or discharge of his Annual Restitution/Disgorgement Payment obligation as set forth in Paragraphs 31 through 33 above. Thompson shall make an annual civil monetary penalty payment ("Annual CMP Payment") following Thompson's satisfaction or discharge of his Restitution/Disgorgement Obligation, and continuing until July 31, 2011 (or until the CMP is paid in full, if that happens first). [1] Thompson shall make each such Annual CMP Payment by electronic funds transfer, or by U.S. postal money order, certified check, bank cashiers check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to Dennese Posey, or her successor, Division of Trading and Markets, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW Washington, D.C. 20581, under cover of a letter that identifies Thompson and the name and docket number of the proceeding. Thompson shall simultaneously transmit a copy of the cover letter and the form of payment to

---

[1]   Should the amount due under the payment plan for any Annual Restitution/Disgorgement Payment be greater than the balance due on Thompson's restitution/disgorgement obligation, the amount due under the payment plan not paid as restitution/disgorgement will constitute Thompson's first Annual CMP Payment and be paid as specified above.

the Monitor and to the Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 1155 21st Street, NW, Washington, D.C. 20581.

35.   ANNUAL PAYMENT:  The Annual Payments (the Annual Restitution/ Disgorgement Payment followed by the Annual CMP Payment) shall be calculated as follows:

| Where Adjusted Gross Income Plus Net Cash Receipts Total: | Percent of total to be paid by Thompson in accordance with Attachment A is: |
|---|---|
| Under  $25,000.00 | 0% |
| $25,000.00 up to and including $50,000.00 | 20% of the amount between $25,000.00 and $50,000 |
| $50,000.00 up to and including $100,000 | $5,000.00 (which represents 20% of the amount between $25,000.00 and $50,000.00) plus 30% of the amount between $50,000.00 and $100,000. |
| Above $100,000 | $20,000.00 (which represents 20% of the amount between $25,000.00 and $50,000.00 plus 30% of the amount between $50,000.00 and $100,000) plus 40% of the amount above $100,000. |

36.   Cooperation:  Thompson shall cooperate fully and expeditiously with the Monitor and the Commission in carrying out all duties with respect to his Annual Restitution/Disgorgement Payments and Annual CMP Payments.  He shall cooperate fully with the Monitor and the Commission in explaining his financial income and earnings, status of assets, financial statements, asset transfers and tax returns, and shall provide any information concerning himself as may be required by the Commission and/or the Monitor.  Furthermore, Thompson shall provide such additional information and documents with respect thereto as may be requested by the Commission and/or the Monitor.

37.   Collateral Agreements:  Thompson shall immediately notify the Commission if he

makes or has previously made any agreement with any victim account holder obligating him to make payments outside of this order. Thompson shall also provide immediate evidence of any payments made pursuant to such agreement in the manner required by Paragraph 41. Upon being notified of any payments made by Thompson to victim account holders outside of this Order, the Commission and the Monitor will have the right to reduce and offset Thompson's obligation to specified victim account holders, on an annual basis, and to make any other changes in the restitution distribution that they deem appropriate.

38. <u>Default</u>: Any failure by Thompson to carry out any of the terms, conditions or obligations under any paragraph of this Consent Order shall constitute an Event of Default. If any Event of Default occurs the Commission (or its designee) shall be entitled to:

  a. an order requiring immediate payment of any unpaid Restitution/Disgorgement Payment and/or Annual CMP Payments, or, at the Commission's option, the entire unpaid balance, or any unpaid portion, of the Restitution Obligation, the Disgorgement amount and/or civil monetary penalty set forth in Paragraphs 31 through 35 above; and/or

  b. move the Court for imposition of all other available remedies, including, but not limited to, an order holding Thompson in contempt for violation of this Order.

Upon the occurrence of an Event of Default based upon a claim or cause of action that Thompson failed to make any Annual Restitution/Disgorgement Payments and/or Annual CMP Payments when due, Thompson will be barred from asserting any defense, including expiration of any statute of limitations, waiver, estoppel or laches, where such defense is based on the alleged failure of the Commission to pursue such claims or causes of action during the pendency of this civil action, during the negotiation of Thompson's consent to this Order or while this Order remains in effect. The only issue that Thompson may raise in defense is whether he made the Annual Restitution/Disgorgement Payments and/or Annual CMP Payment as directed by the

Monitor. Any motion by the Commission for entry of an order pursuant to this paragraph requiring payment of less than the full amount of the restitution/disgorgement obligation and/or civil monetary penalty, set forth in paragraphs 31 through 35 above, or any acceptance by the Commission of partial payment of the Annual Restitution/Disgorgement Payments and/or Annual CMP Payments made by Thompson shall not be deemed a waiver of the Commission's right to require Thompson to make further payments pursuant to the payment plans set forth above, or, in the event of a further Event of Default, a waiver of the Commission's right to require immediate payment of the entire remaining balance, or any unpaid portion, of the restitution/disgorgement amount and/or civil monetary penalty set forth in paragraphs 31 through 35 above.

39.    Reliance on Financial Disclosure:    Based upon the sworn representations of Thompson contained in his Financial Disclosure Statements dated December 6, 2001 and December 12, 2001, and other evidence provided by Thompson regarding his financial condition, the Court is not ordering immediate payment of full restitution, disgorgement or the CMP pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 and Rule 143.8 of the Commission's Regulations, 17 C.F.R. § 143.8. The determination not to order immediate payment of the full amount of restitution owed, the disgorgement amount and the CMP is contingent upon the accuracy and completeness of the Financial Disclosure Statement and other evidence provided by Thompson regarding his financial condition. If at any time following the entry of this Consent Order, the Commission obtains information indicating that Thompson's representations to the Commission concerning his financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may move this Court for an order requiring Thompson to make immediate payment

of his entire Restitution obligation, disgorgement and/or the CMP, or of any portion thereof, the amount of which shall be determined by the Commission. In connection with any such motion, the only issues shall be whether the financial information provided by Thompson was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made. In its motion, the Commission may move this Court to consider all available remedies, including, but not limited to ordering Thompson to pay funds or transfer assets or directing the forfeiture of any assets and the Commission may also request additional discovery. Thompson may not, by way of defense to such motion, challenge the validity of his consent to this Consent order, or contest any of the findings of fact or conclusions of law set forth in this Consent Order, assert that payment of the Restitution Obligation, the disgorgement amount, or the CMP amount should not be ordered, or contest the amount of the Restitution Obligation, the disgorgement amount or the CMP amount to be paid. If in such motion the Commission moves for, and the Court orders, payment of less than the full amount of the Restitution Obligation, disgorgement amount or the full amount of the CMP, such motion will not be deemed a waiver of the Commission's right to require Thompson to make further payment pursuant to the payment plans set forth above.

40.     Transfer of Assets:  Thompson shall not transfer or cause others to transfer funds or other property to the custody, possession or control of any members of his family or any other person for the purpose of concealing such funds from the Court or the Commission until the total Restitution Obligation, disgorgement and CMP are paid in full.

**VI.**

**MISCELLANEOUS PROVISIONS**

41.  Notices:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

If prior to March 15, 2002, then to:

Regional Counsel
Division of Enforcement – Central Region
Commodity Futures Trading Commission
300 South Riverside Plaza, Suite 1600 N
Chicago, Illinois 60606

If after March 15, 2002, then to:

Regional Counsel
Division of Enforcement – Central Region
Commodity Futures Trading Commission
525 W. Monroe, Suite 1100
Chicago, Illinois 60606

Notice to Thompson:
Geoffrey Thompson
5434 Prairie Ave., Unit 1 S,
Chicago, Illinois 60615

Notice to Monitor:
Daniel Driscoll
Vice President, Compliance
National Futures Association
200 West Madison Street
Chicago, Illinois 60606

In the event that Thompson changes his residential or business telephone number(s) and/or address(es) at any time, he shall provide written notice of his new number(s) and/or address(es) to the Commission within ten (10) calendar days thereof.

42.  Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto.  Nothing shall serve to amend or

modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

43.     Waiver:    The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

44.     Successors and Assigns:  This Consent Order shall inure to the benefit of and be binding upon the successors, assigns, heirs, beneficiaries and administrators of the parties hereto.

45.     Acknowledgements:  Upon being served with copies of this Consent Order after entry by the Court, Thompson shall sign acknowledgements of such service and serve such acknowledgments on this Court and the Commission within seven (7) calendar days.

46.     Invalidation:  If any provision of this Consent Order, or the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provision to any other person or circumstance shall not be effected by the holding.

47.     Jurisdiction:    This Court shall retain jurisdiction of this cause to assure compliance with this Consent Order and for all other purposes related to this action.

ENTERED THIS _____ of MAR 2 7 2002_____, 2002.

_____

Hon. George W. Lindberg
United States District Court Judge

Consented to and
approved for entry by:

_Geoffrey Thompson, *Pro se*_

Ava Gould, Trial Attorney
David A. Terrell, Senior Trial Attorney
Elizabeth M. Streit, Senior Trial Attorney
Scott R. Williamson, Deputy Regional
Counsel,

Ava M. Gould
Commodity Futures Trading Commission
525 W. Monroe, Suite 1100
Chicago, Illinois 60661
Phone:  (312) 596-0535
Fax:     (312) 596-0714

20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) CIVIL ACTION NO.  00 C 7344 |
| | ) |
| | ) **The Honorable Judge** |
| Plaintiff, | ) **George W. Lindberg** |
| | ) |
| v. | ) |
| | ) |
| BROWN, ET AL. | ) **Magistrate Judge Bobrick** |
| | ) |
| Defendants, | ) |
| | ) **ATTACHMENT A** |

## ATTACHMENT A
## TO CONSENT ORDERS OF PERMANENT INJUNCTION

1.   The Plaintiff, Commodity Futures Trading Commission and Defendants Martin Brown, Geoffrey Thompson and Ydiyell Howard, and Relief Defendant Javette King agreed to Consent Orders of Permanent Injunction entered by the Court in the above matter.  This Attachment is incorporated and made a part of each of the Consent Orders entered by the Court.

2.   Of the three victim accounts, two have been made whole by Stone.  Specifically, Stone reimbursed the first victim account holder $248,289 and the second victim account holder $484,235.

3.   The amount of losses and the recipients of restitution for the third victim account were not determined at the time the Consent Orders were entered.

4.   The CFTC will submit a proposed distribution plan to the Court for its approval when there has been a determination of the amount of losses due the third victim account holder or other parties.  The Monitor will distribute restitution payments pursuant to Court Order.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ORIGINAL

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) CIVIL ACTION NO. 00 C 7344 |
|  | ) |
| Plaintiff, | ) The Honorable Judge ) George W. Lindberg |
|  | ) |
| v. | ) |
|  | ) |
| BROWN, ET AL. | ) |
|  | ) Magistrate Judge Bobrick |
| Defendants, | ) |
|  | ) |
|  | ) CONSENT ORDER OF PERMANENT ) INJUNCTION – YDIYELL HOWARD |
|  | ) |

### CONSENT ORDER OF PERMANENT INJUNCTION
### AND OTHER EQUITABLE RELIEF
### AGAINST DEFENDANT YDIYELL HOWARD

1.      On November 21, 2000, Plaintiff, Commodity Futures Trading Commission ("Commission") filed a Complaint against Martin Brown ("Brown") and Geoffrey Thompson ("Thompson"), Defendants, and several Relief Defendants seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 *et seq.* (Supp. 2001) and regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* (2000). The Court entered Consent Orders of Preliminary Injunction against Defendant Thompson on December 22, 2000 and against Defendant Brown on March 1, 2001. The orders enjoined Defendants from dissipating or disposing of any assets in their custody or control and enjoined them from committing further violations of the Act as alleged in the complaint. On *March 27*, 2002, the Commission filed a First Amended Complaint ("Complaint") adding Ydiyell Howard ("Howard") as a party defendant and naming additional Relief Defendants. The complaint

alleges, *inter alia*, that defendants Brown, Thompson and Howard fraudulently allocated commodity interest trades by placing losing trades in customer accounts ("victim accounts") and winning trades in the accounts of friends and relatives ("favored accounts").

2.      To effect settlement of the matters alleged in the Complaint against Howard without a trial on the merits, Howard and the Commission consent to the entry of this Consent Order of Permanent Injunction and other Equitable Relief Against Ydiyell Howard ("Consent Order"). Howard also: (1) acknowledges service of the Summons and Complaint; (2) admits both personal and subject matter jurisdiction of this Court in this action; (3) admits that venue properly lies with this Court; and (4) generally waives the entry of findings of fact and conclusions of law in this action pursuant to Rule 52 of the Federal Rules of Civil Procedure, except as provided in Part II below.

3.      By consenting to the entry of this Consent Order, Howard neither admits nor denies any of the allegations of the Complaint except as to jurisdiction and venue. Notwithstanding the above, Howard further agrees and the parties to this Consent Order intend that all of the findings of fact made by the Court in this Consent Order shall be taken as true and correct and be given preclusive effect without further proof in any subsequent bankruptcy proceeding filed by, on behalf of or against Howard for the purpose of determining whether the restitution and/or other payments ordered herein are excepted from discharge. Howard shall also provide immediate notice of any bankruptcy proceeding filed by, on behalf of or against him in the manner required by the Notice provision of this Consent Order.

4.      Howard agrees (1) not to take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating or tending to create, the impression that the Complaint or this Consent Order is without factual basis; and

2

(2) no agent or employee of Howard acting under Howard's authority or control shall take any action or make any statement denying, directly or indirectly, any allegation in the Complaint or creating, or tending to create, the impression that the Complaint is without factual basis and Howard shall take all steps necessary to insure that all of his agents and employees understand and comply with this agreement. Nothing in this provision affects Howard's (1) testimonial obligations; or (2) right to take legal positions in other proceedings to which the Commission is not a party.

5.      Howard waives: (1) all claims that he may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121. §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1, et seq. (2001), relating to or arising from this action and any right under EAJA to seek costs, fees and other expenses relating to or arising from this proceeding; (2) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (3) all rights of appeal from this Consent Order.

6.      The parties hereto also consent to the continued jurisdiction of the Court for the purpose of enforcing the terms and conditions of this Consent Order and for any other purposes relevant to this case.

7.      Howard agrees to cooperate fully with the Commission in its prosecution of the Complaint in this proceeding, in any ongoing investigations related to the subject matter of the Complaint, and in all other proceedings arising from such investigations by, among other things: (1) responding promptly, completely, and truthfully to any inquiries or requests for information and otherwise cooperating fully with respect to discovery; (2) providing authentication of

3

documents; (3) testifying completely and truthfully; and (4) not asserting privileges under the Fifth Amendment of the United States Constitution in connection with any testimony Howard is asked to provide.

8.      Howard further affirms that he has read the Consent Order and agrees to entry of this Consent Order voluntarily, and that no promise or threat of any kind has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce him to consent to this Consent Order, other than as set forth specifically herein.

## II.

## FINDINGS OF FACT

9.      The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason to delay. The Court therefore directs the entry of findings of fact, conclusions of law, a permanent injunction and ancillary equitable relief, pursuant to § 6c of the Commodity Exchange Act, as amended, 7 U.S.C. § 13a-1 (1994), as set forth herein.

10.     This Court has subject matter jurisdiction over this action and the allegations in the Complaint pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (1994).

11.     This Court has personal jurisdiction over Howard and Howard has acknowledged service of the Summons and Complaint and consented to the Court's jurisdiction over him.

12.     The Commission and Howard have agreed that this Court shall retain jurisdiction over each of them for the purpose of enforcing the terms of this Consent Order.

## THE PARTIES AND OTHER ENTITIES

13.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged with the responsibility for administering and enforcing the provisions

4

of the Act, as amended, 7 U.S.C. §§ 1 *et seq.* (2001), and Regulations promulgated under it, 17 C.F.R. §§ 1 *et seq.* (2001).

14.     Defendant Ydiyell Howard, age 30, resides at 1423 W. Sherwin, Chicago, Illinois 60626. At all relevant times, Howard was an employee of F.C. Stone, LLC ("Stone"). Howard has never been registered with the Commission in any capacity. Howard is no longer employed at Stone.

15.     F.C. Stone, LLC is registered with the Commission as a futures commission merchant ("FCM") and is a member firm of the Chicago Board of Trade, the Chicago Mercantile Exchange and the National Futures Association. It is located at Suite 2600, 141 West Jackson Blvd., Chicago, Illinois 60604. As of July 1, 2000, it succeeded Saul Stone & Company LLC and assumed the rights and responsibilities of Saul Stone under all relevant customer account agreements. At all times, the term "Stone" shall refer to both Saul Stone & Company, LLC and F.C. Stone, LLC, as its successor and assignee.

## THE ALLOCATION SCHEME

16.     During the relevant time, Howard, was employed in Stone's Futures Direct unit. Futures Direct accountholders are generally experienced traders with large accounts who are permitted to place orders for commodity interest trades directly to the floor of the exchange using, at least in some instances, execution brokers.

17.     The favored accounts of friends and relatives of the Defendants were opened between February 2000 and July 2000 as Futures Direct accounts at Stone under the following names and account numbers; Javette L. King, Brown's girlfriend, account No. 18809; Prairie Garden Condos, Brown's sister's business, account No. 18799; Loren Hayes, Thompson's sister, account No. 18766; Bernadette Thomas, Thompson's friend, account No. 18281; and, Michael

Clemenson, Howard's friend, account No. 18765. Brown and Thompson placed commodity interest trades for the favored accounts through execution brokers.

18.     The scheme worked as follows: Brown or Thompson placed a trade for the benefit of one of the favored accounts. By the end of the trading day, if the trade appeared profitable based upon subsequent market movements, Brown or Thompson kept the trade in the favored account to which it had been entered. If a trade appeared unprofitable, Brown or Thompson requested that the trade be transferred to one of several customer accounts victimized in the scheme. This transfer would be made either a) by calling the execution broker and instructing the execution broker to transfer the trade from the favored account to one of the victim accounts, or b) if the trade had already been accepted from the execution broker by Stone, by asking someone at Stone to move the trade from a favored account to a victim account.

19.     Howard worked side-by-side with Thompson and Brown and socialized with them. As part of his duties, Howard processed account opening documents and reviewed daily margin and equity runs. Howard knew that Brown and Thompson were engaged in unauthorized trading and that they were allocating profitable trades to favored accounts and unprofitable trades to victim accounts. He silently acquiesced to the scheme and failed to disclose Brown and Thompson's conduct to Stone management.

20.     In June 2000, Howard directed Clemenson, his friend, to submit false account opening documents and caused an account to be opened at Stone without an initial deposit. Between July 2000 and October 2000, profitable trades totaling $91,975 were placed into the Clemenson account at Stone. Howard arranged for funds to be wired out of Clemenson's account at Stone into Clemenson's bank account. Thereafter, Howard instructed Clemenson to transfer the funds into Howard's account.

6

21.     In the at least eight months that the Defendants perpetrated the scheme, the favored accounts amassed in total no less than $2,324,220. The victim accounts suffered total losses of at least $1,340,381.

22.     The victim account holders relied on the Defendants to assign to them the proper trades and to correct errors to assure that their account balances were true and correct and accurately reflected authorized trading activity.

23.     Howard knew that neither Brown nor Thompson had specific authorization to place the trades in the victim accounts or written authorization to place trades in those accounts without specific authorization.

24.     During all relevant times, Howard failed to disclose to the victim account holders or Stone the material facts that Brown and Thompson were not authorized to trade on anyone's behalf or that they were allocating losing trades to victim accounts and winning or profitable trades to favored accounts.

25      Between February and October 2000, the Defendants and others caused transfers of the aggregate amounts of $2,010,092 from the favored accounts to bank accounts in the names of King, Prairie Garden Condos, Hayes, Thomas and Clemenson. As a result of the fraud, King received approximately $556,000; Prairie Garden Condos received approximately $697,000; Hayes received approximately $488,317; Thomas received approximately $237,000 and the Clemenson account received approximately $61,525.

26.     Since October 27, 2000, Stone has demanded return of the illicitly obtained profits and obtained approximately $1,106,335 from Defendant Brown and Relief Defendants Prairie Garden Condos, Brenda Brown and Javette King for the benefit of the customers whose accounts were victimized in the scheme.

27. However, since that date, neither Howard nor the other Defendants or the Relief Defendants have returned the approximately $200,000 still owed to Stone's customers victimized by the scheme or the $1,200,000 in ill-gotten gains obtained by the Defendants and Relief Defendants and others as a result of the fraudulent conduct.

### III.

### CONCLUSIONS OF LAW

28. Since at least November 1999, and continuing through October 2000, the Defendants violated sections 4b(a)(i) and 4b(a)(iii) of the Act, 7 U.S.C. § 6b(a)(i) and 6b(a)(iii), in that they cheated, defrauded and willfully deceived Stone customers by fraudulently allocating commodity interest contracts between favored accounts and other customer accounts without authorization.

29. Since at least November 1999, and continuing through October 2000, the Defendants violated Commission Regulation 166.2, 17 C.F.R. § 166.2, in that they effected transactions in commodity interests for the accounts of customers before the customers, or persons designated by the customers to control the accounts, specifically authorized the transactions or authorized in writing the effecting of transactions for the accounts without the customers' specific authorization in violation of Regulation 166.2, 17 C.F.R. § 166.2.

30. Since at least July 2000 and continuing through October 2000, Defendant Howard knowingly participated in the acts constituting violations of the Act and Commission Regulations and therefore aided and abetted those violations. Howard is thereby liable for the violations of sections 4b(a)(i) and 4b(a)(iii) of the Act and Commission Regulation 166.2 pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a).

## IV.

## ORDER FOR PERMANENT INJUNCTION

NOW THEREFORE, IT IS ORDERED THAT:

31.     Howard is permanently restrained, enjoined and prohibited from directly or

indirectly:

       a.     Cheating or defrauding or attempting to cheat or defraud or willfully deceiving or attempting to deceive any other person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof, in violation of Sections 4b(a)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(i) and (iii); and

       b.     Effecting transactions in a commodity interest for the account of any customer unless before the transaction the customer, or person designated by the customer to control the account, specifically authorizes the transaction or authorizes in writing the effecting of transactions in commodity interests for the account without the customer's specific authorization, in violation of Regulation 166.2, 17 C.F.R. § 166.2.

32.     Howard is further permanently restrained, enjoined and prohibited from directly

or indirectly:

       a.     Engaging in, controlling or directing the trading for any futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

       b.     Entering into any futures or options transactions for his own account, for any account in which he has a direct or indirect interest and/or having any futures or options traded on his behalf; and

       c.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent or officer of any person registered, exempted from

registration, or required to be registered with the Commission unless such exemption is pursuant to Commission Regulation 4.14(a)(9).

33.     The injunctive provisions of this Consent Order shall be binding upon Howard, upon any person insofar as he or she is acting in the capacity of officer, agent, servant or employee of Howard, and upon any person who receives actual notice of this Consent Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Howard.

## V.

### ORDER FOR OTHER EQUITABLE RELIEF

IT IS FURTHER ORDERED THAT:

34.     RESTITUTION:

a.      Restitution Obligation: Howard is jointly and severally liable with Defendants Thompson and Brown for up to $91,975 (Ninety One Thousand Nine Hundred Seventy Five Dollars) in restitution plus pre-judgment interest thereon from October 27, 2000, to the date of this order in the amount of $_11,099.19_ ("Restitution Obligation"). Pre-judgment interest is calculated at the underpayment rate established by the Internal Revenue Service, pursuant to 26 U.S.C. § 662(a)(2). The Restitution Obligation represents net profits allocated to the Clemenson account. Howard shall pay post-judgment interest from the date of this Order until his Restitution Obligation is paid in full, at the Treasury Bill rate prevailing on the date of this Order, pursuant to 28 U.S.C. § 1961(a).

b.      Howard's Restitution Obligation shall be further offset by any restitution or disgorgement payments made by any other Defendants or Relief Defendants on behalf of the victims of the fraudulent allocation scheme, until each victim account holder is made whole.

c.      Victim Accounts: Attachment A, attached hereto and incorporated by reference, is a listing of the victim accounts maintained at F.C. Stone. Attachment A includes, _inter alia,_ the Commission's calculation of the total amount of restitution owed each victim account holder or Stone. Omission from Exhibit A shall in no way limit the ability of any victim account holder or Stone to seek recovery from any Defendant or any other person or entity. Restitution payments shall be paid in accordance with the provisions of Paragraph 36 below.

35.    DISGORGEMENT: Howard is ordered to disgorge $33,500 (Thirty Three Thousand Five Hundred Dollars), representing Howard's personal gain from the conduct alleged in the Complaint.  Payments made by Howard towards his Restitution Obligation shall reduce the amount of disgorgement dollar for dollar.

36.    PAYMENT OF RESTITUTION OBLIGATION AND DISGORGEMENT:

Restitution and disgorgement shall be made as follows:

a.    The amount of $30,450 representing the balance of funds frozen in the Clemenson account at Stone shall be released to Stone with Howard's cooperation and reported to the Monitor, as described in Paragraph 36c below, within ten days of the date this Order is entered by the Court.  The Monitor shall consider the payment in accordance with Attachment A and any applicable court order.   Such payment shall reduce Howard's Restitution Obligation on a dollar-for-dollar basis.

b.    Howard shall make an annual restitution obligation/disgorgement payment ("Annual Restitution/Disgorgement Payment") to an account designated by the Monitor of: (1) a percentage of his adjusted gross income (as defined by the Internal Revenue Code) earned or received by him during the previous calendar year, plus (2) all other cash receipts, cash entitlements or proceeds of non-cash assets received by him during the previous calendar year pursuant to the payment plan outlined in Paragraph 38 below.  The Annual Restitution/Disgorgement Payment shall be made on or before July 31 of each calendar year starting in calendar year 2002 and continuing for ten years or until the Restitution Obligation and Disgorgement is paid in full from any source or discharged, whichever occurs sooner.   The ten year period for determining the Annual Restitution/Disgorgement Payments shall run from January 1, 2001 through December 31, 2010.  Annual Restitution/Disgorgement Payments for a calendar year shall take place by July 31 of the following year.  Therefore, the final annual payment for the year 2010 will occur on or before July 31, 2011.

c.    Howard agrees that the National Futures Association is hereby designated as the Monitor for a period of eleven years commencing January 1, 2001.  Notice to the Monitor shall be made to Daniel A. Driscoll, Esq., Executive Vice President, Chief Compliance Officer, or his successor, at the following address:  National Futures Association, 200 West Madison Street, Chicago, Illinois 60606.

d.  Howard shall provide a sworn financial statement to the Monitor on June 30 and December 31 of each calendar year, starting June 30, 2002 and continuing through and including June 2011. The financial statement shall provide;

   i).  a true and complete itemization of all of his rights, title and interest in (or claimed in) any asset, wherever located, however and by whomever held;

   ii).  an itemization, description and explanation of all transfers of assets with a value of $1,000 or more made by or on behalf of him over the preceding six-month interval; and

   iii).  a detailed description of the source and amount of all his income or earnings, however generated.

   Howard shall also provide the Monitor with complete copies of his signed federal income tax returns, including all schedules and attachments thereto (*e.g.*, IRS Forms W-2) and Forms 1099, as well as any filings he is required to submit to any state tax or revenue authority, for the preceding calendar year, on or before June 30 of each calendar year, or as soon thereafter as the same are filed, starting in calendar year 2002 and continuing for ten years or until all amounts due under this agreement are paid in full or discharged, whichever occurs first.

e.  If, during the same time period, Howard elects to file a joint tax return, he shall provide all documents called for by this paragraph 35, including the signed and filed joint tax return, plus a draft individual tax return prepared on IRS Form 1040 containing a certification by a licensed certified public accountant that the "Income" section (currently lines 7-22 of Form 1040) truly, accurately and completely reflects all of Howard's income, that the "Adjusted Gross Income" section truly, accurately and completely identifies all deductions that Howard has a right to claim, and that the deductions contained in the "Adjusted Gross Income" section are equal to or less than 50% of the deductions that Howard is entitled to claim on the joint tax return; provided however that Howard may claim 100% of the deductions contained in the "Adjusted Gross Income" section that are solely his. Such individual tax return shall include all schedules and attachments thereto (*e.g.*, IRS Forms W-2) and Forms 1099, as well as any filing required to be submitted to any state tax or revenue authority.

f.  Based on the information contained in Howard's tax returns, Howard's sworn Financial Disclosure Statement and other financial records provided to the Commission, the Monitor shall calculate the Annual Restitution/Disgorgement Payment to be paid by Howard for that year. Thereafter, the Monitor shall distribute the payment in accordance with

Attachment A and any applicable court order. On or before June 30 of each year and starting in calendar year 2002, the Monitor shall send written notice to Howard with instructions to pay the Annual Restitution/Disgorgement Payment on or before July 31 of that year to an account designated by the Monitor, or, if Howard's Restitution Obligation and/or disgorgement has been satisfied or discharged, the amount of civil monetary penalty to be paid in accordance with the payment instructions in Paragraphs 37-38 below. If the Monitor determines that an Annual Restitution/Disgorgement Payment is due, then the Monitor will increase the amount of the remaining Annual Restitution/Disgorgement Payment by post-judgment interest calculated to the date of the payment based on the total remaining Restitution Obligation and Disgorgement, pursuant to 28 U.S.C. § 1961. The Monitor shall then disburse any payment by Howard in accordance with Attachment A. Based upon the amount of funds available, the Monitor may decide to defer distribution. If at the end of the ten year payment period, any amount of the Annual Restitution/Disgorgement Payments has not been distributed, that amount shall instead be paid and applied as payment to the civil monetary penalty obligation, as provided in Paragraph 37 below.

37.  __CIVIL MONETARY PENALTY__ :

Howard shall pay a contingent civil monetary penalty in an amount up to $55,000 (Fifty Five Thousand Dollars) pursuant to the payment plan outlined in Paragraph 38 below, commencing upon Howard's fulfillment or discharge of his Annual Restitution/Disgorgement Payment obligation as set forth in Paragraphs 34 through 36 above. Howard shall make an annual civil monetary penalty payment ("Annual CPM Payment") following Howard's satisfaction or discharge of his Restitution/Disgorgement Obligation, and continuing until July 31, 2011 (or until the CMP is paid in full, if that happens first). [1] Howard shall make each such Annual CMP Payment by electronic funds transfer, or by U.S. postal money order, certified check, bank cashiers check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to Dennese Posey, or her successor, Division of Trading and

---

[1]  Should the amount due under the payment plan for any Annual Restitution/Disgorgement Payment be greater than the balance due on Howard's restitution/disgorgement obligation, the

Markets, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW Washington, D.C. 20581, under cover of a letter that identifies Howard and the name and docket number of the proceeding. Howard shall simultaneously transmit a copy of the cover letter and the form of payment to the Monitor and to the Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 1155 21st Street, NW, Washington, D.C. 20581.

38. ANNUAL PAYMENT: The Annual Payments (the Annual Restitution/ Disgorgement Payment followed by the Annual CMP Payment) shall be calculated as follows:

| Where Adjusted Gross Income Plus Net Cash Receipts Total: | Percent of total to be paid by Howard in accordance with Attachment A is: |
|---|---|
| Under $25,000.00 | 0% |
| $25,000.00 up to and including $50,000.00 | 20% of the amount between $25,000.00 and $50,000 |
| $50,000.00 up to and including $100,000 | $5,000.00 (which represents 20% of the amount between $25,000.00 and $50,000.00) plus 30% of the amount between $50,000.00 and $100,000. |
| Above $100,000 | $20,000.00 (which represents 20% of the amount between $25,000.00 and $50,000.00 plus 30% of the amount between $50,000.00 and $100,000) plus 40% of the amount above $100,000. |

39. Cooperation: Howard shall cooperate fully and expeditiously with the Monitor and the Commission in carrying out all duties with respect to his Annual Restitution/Disgorgement Payments and Annual CMP Payments. He shall cooperate fully with

---

amount due under the payment plan not paid as restitution/disgorgement will constitute Howard's first Annual CMP Payment and be paid as specified above.

the Monitor and the Commission in explaining his financial income and earnings, status of assets, financial statements, asset transfers and tax returns, and shall provide any information concerning himself as may be required by the Commission and/or the Monitor. Furthermore, Howard shall provide such additional information and documents with respect thereto as may be requested by the Commission and/or the Monitor.

40. <u>Collateral Agreements</u>: Howard shall immediately notify the Commission if he makes or has previously made any agreement with any victim account holder obligating him to make payments outside of this order. Howard shall also provide immediate evidence of any payments made pursuant to such agreement in the manner required by Paragraph 44. Upon being notified of any payments made by Howard to victim account holders outside of this Order, the Commission and the Monitor will have the right to reduce and offset Howard's obligation to specified victim account holders, on an annual basis, and to make any other changes in the restitution distribution that they deem appropriate.

41. <u>Default</u>: Any failure by Howard to carry out any of the terms, conditions or obligations under any paragraph of this Consent Order shall constitute an Event of Default. If any Event of Default occurs the Commission (or its designee) shall be entitled to:

    a.    an order requiring immediate payment of any unpaid Restitution/Disgorgement Payment and/or Annual CMP Payments, or, at the Commission's option, the entire unpaid balance, or any unpaid portion, of the Restitution Obligation, the Disgorgement amount and/or civil monetary penalty set forth in Paragraphs 34 through 38 above; and/or

    b.    move the Court for imposition of all other available remedies, including, but not limited to, an order holding Howard in contempt for violation of this Order.

Upon the occurrence of an Event of Default based upon a claim or cause of action that Howard failed to make any Annual Restitution/Disgorgement Payments and/or Annual CMP

Payments when due, Howard will be barred from asserting any defense, including expiration of any statute of limitations, waiver, estoppel or laches, where such defense is based on the alleged failure of the Commission to pursue such claims or causes of action during the pendency of this civil action, during the negotiation of Howard's consent to this Order or while this Order remains in effect. The only issue that Howard may raise in defense is whether he made the Annual Restitution/Disgorgement Payments and/or Annual CMP Payment as directed by the Monitor. Any motion by the Commission for entry of an order pursuant to this paragraph requiring payment of less than the full amount of the restitution/disgorgement obligation and/or civil monetary penalty, set forth in paragraphs 34 through 38 above, or any acceptance by the Commission of partial payment of the Annual Restitution/Disgorgement Payments and/or Annual CMP Payments made by Howard shall not be deemed a waiver of the Commission's right to require Howard to make further payments pursuant to the payment plans set forth above, or, in the event of a further Event of Default, a waiver of the Commission's right to require immediate payment of the entire remaining balance, or any unpaid portion, of the restitution/disgorgement amount and/or civil monetary penalty set forth in paragraphs 34 through 38 above.

42. <u>Reliance on Financial Disclosure</u>: Based upon the sworn representations of Howard contained in his Financial Disclosure Statement dated December 5, 2001, and other evidence provided by Howard regarding his financial condition, the Court is not ordering immediate payment of full restitution, disgorgement or the CMP pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 and Rule 143.8 of the Commission's Regulations, 17 C.F.R. § 143.8. The determination not to order immediate payment of the full amount of restitution owed, the disgorgement amount and the CMP is contingent upon the accuracy and completeness of the

Financial Disclosure Statement and other evidence provided by Howard regarding his financial condition. If at any time following the entry of this Consent Order, the Commission obtains information indicating that Howard's representations to the Commission concerning his financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may move this Court for an order requiring Howard to make immediate payment of his entire Restitution obligation, disgorgement and/or the CMP, or of any portion thereof, the amount of which shall be determined by the Commission. In connection with any such motion, the only issues shall be whether the financial information provided by Howard was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made. In its motion, the Commission may move this Court to consider all available remedies, including, but not limited to ordering Howard to pay funds or transfer assets or directing the forfeiture of any assets and the Commission may also request additional discovery. Howard may not, by way of defense to such motion, challenge the validity of his consent to this Consent Order, or contest any of the findings of fact or conclusions of law set forth in this Consent Order, assert that payment of the Restitution Obligation, the disgorgement amount, or the CMP amount should not be ordered, or contest the amount of the Restitution Obligation, the disgorgement amount or the CMP amount to be paid. If in such motion the Commission moves for, and the Court orders, payment of less than the full amount of the Restitution Obligation, disgorgement amount or the full amount of the CMP, such motion will not be deemed a waiver of the Commission's right to require Howard to make further payment pursuant to the payment plans set forth above.

43. <u>Transfer of Assets</u>: Howard shall not transfer or cause others to transfer funds or other property to the custody, possession or control of any members of his family or any other

person for the purpose of concealing such funds from the Court or the Commission until the total

Restitution obligation, disgorgement and CMP are paid in full.

## VI.

## MISCELLANEOUS PROVISIONS

44.    Notices:  All notices required to be given by any provision in this Consent Order

shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Regional Counsel
> Division of Enforcement -- Central Region
> Commodity Futures Trading Commission
> 525 W. Monroe, Suite 1100
> Chicago, Illinois 60661

Notice to Howard:

> Ydiyell Howard
> 1423 West Sherwin
> Chicago, Illinois 60626

Notice to Monitor:
> Daniel Driscoll
> Vice President, Compliance
> National Futures Association
> 200 West Madison Street
> Chicago, Illinois 60606

In the event that Howard changes his residential or business telephone number(s) and/or

address(es) at any time, he shall provide written notice of his new number(s) and/or address(es)

to the Commission within ten (10) calendar days thereof.

45.    Entire Agreement and Amendments:  This Consent Order incorporates all of the

terms and conditions of the settlement among the parties hereto.  Nothing shall serve to amend or

modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed

by all parties hereto; and (3) approved by order of this Court.

46.  Waiver:  The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

47.  Successors and Assigns:  This Consent Order shall inure to the benefit of and be binding upon the successors, assigns, heirs, beneficiaries and administrators of the parties hereto.

48.  Acknowledgements:  Upon being served with copies of this Consent Order after entry by the Court, Howard shall sign acknowledgements of such service and serve such acknowledgments on this Court and the Commission within seven (7) calendar days.

49.  Invalidation:  If any provision of this Consent Order, or the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provision to any other person or circumstance shall not be effected by the holding.

50.  Jurisdiction:  This Court shall retain jurisdiction of this cause to assure compliance with this Consent Order and for all other purposes related to this action.

ENTERED THIS _____ of ___MAR 2 7 2002___, 2002.

Hon. George W. Lindberg
United States District Court Judge

Consented to and
approved for entry by:

19

Ydiyell Howard, *Pro Se*

Ava Gould, Trial Attorney
David A. Terrell, Senior Trial Attorney
Elizabeth M. Streit, Senior Trial Attorney
Scott R. Williamson, Deputy Regional
Counsel,
Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0700
Attorneys for the Plaintiff

20

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | CIVIL ACTION NO.  00 C 7344 |
| | ) ) | The Honorable Judge |
| Plaintiff, | ) ) | George W. Lindberg |
| v. | ) ) ) | |
| BROWN, ET AL. | ) ) | Magistrate Judge Bobrick |
| Defendants, | ) ) ) | ATTACHMENT A |

ATTACHMENT A
TO CONSENT ORDERS OF PERMANENT INJUNCTION

1.  The Plaintiff, Commodity Futures Trading Commission and Defendants Martin Brown, Geoffrey Thompson and Ydiyell Howard, and Relief Defendant Javette King agreed to Consent Orders of Permanent Injunction entered by the Court in the above matter. This Attachment is incorporated and made a part of each of the Consent Orders entered by the Court.

2.  Of the three victim accounts, two have been made whole by Stone.  Specifically, Stone reimbursed the first victim account holder $248,289 and the second victim account holder $484,235.

3.  The amount of losses and the recipients of restitution for the third victim account were not determined at the time the Consent Orders were entered.

4.  The CFTC will submit a proposed distribution plan to the Court for its approval when there has been a determination of the amount of losses due the third victim account holder or other parties.  The Monitor will distribute restitution payments pursuant to Court Order.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**ORIGINAL**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) CIVIL ACTION NO. 00 C 7344 |
| Plaintiff, | ) The Honorable Judge<br>) George W. Lindberg |
| v. | ) |
| MARTIN BROWN, GEOFFRY S. THOMPSON, and YDIYELL HOWARD, | ) Magistrate Judge Bobrick |
| Defendants, | ) |
| BRENDA L. BROWN, PRAIRIE GARDEN CONDOS, INC., JAVETTE L. KING, LOREN HAYES, and BERNADETTE THOMAS, | ) CONSENT ORDER<br>) JAVETTE KING |
| Relief Defendants. | ) |

## CONSENT ORDER
### AS TO
### RELIEF DEFENDANT JAVETTE KING

1.   On November 21, 2000, Plaintiff, Commodity Futures Trading Commission ("Commission") filed a Complaint against Martin Brown ("Brown"), Geoffrey Thompson ("Thompson") and Relief Defendant Javette King ("King"), among others, seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 *et* seq. (Supp. 2001) and regulations promulgated thereunder, 17 C.F.R. §§ *et seq.* (2001). The Court entered Consent Orders of Preliminary Injunction against Defendant Brown and Relief Defendant King on March 1, 2001. The order enjoined Brown and King from dissipating or disposing of any assets in their custody or control and enjoined them from

committing further violations of the Act as alleged in the complaint. On **M**ARC**H** **27**, 2002, the Commission filed a First Amended Complaint ("Complaint") adding defendant Ydiyell Howard ("Howard") and naming additional Relief Defendants. The complaint alleges, *inter alia*, that defendants Brown, Thompson and Howard fraudulently allocated commodity interest trades by placing losing trades in customer accounts ("victim accounts") and winning trades in the accounts of friends and relatives ("favored accounts").

2.    To effect settlement of the matters alleged in the Complaint against King without a trial on the merits, King and the Commission consent to the entry of this Consent Order of Disgorgement and other Equitable Relief Against Javette King ("Consent Order"). King also: (1) acknowledges service of the Summons and Complaint; (2) admits both personal and subject matter jurisdiction of this Court in this action; (3) admits that venue properly lies with this Court; and (4) generally waives the entry of findings of fact and conclusions of law in this action pursuant to Rule 52 of the Federal Rules of Civil Procedure, except as provided in Part II below.

3.    By consenting to the entry of this Consent Order, King neither admits nor denies any of the allegations of the Complaint except as to jurisdiction and venue. Notwithstanding the above, King further agrees and the parties to this Consent Order intend that all of the findings of fact made by the Court in this Consent Order shall be taken as true and correct and be given preclusive effect without further proof only in any subsequent bankruptcy proceeding filed by, on behalf of or against King for the purpose of determining whether the disgorgement payments ordered herein are excepted from discharge. King shall also provide immediate notice of any bankruptcy proceeding filed by, on behalf of or against her in the manner required by the Notice provision of this Consent Order.

4.     King agrees (1) not to take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating or tending to create, the impression that the Complaint or this Consent Order is without factual basis; and (2) no agent or employee of King or other person acting under King's authority or control shall take any action or make any statement denying, directly or indirectly, any allegation in the Complaint or creating, or tending to create, the impression that the Complaint is without factual basis and King shall take all steps necessary to insure that all of her agents and employees understand and comply with this agreement.   Nothing in this provision affects King's (1) testimonial obligations; or (2) right to take legal positions in other proceedings to which the Commission is not a party.

5.     King waives: (1) all claims that she may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121. §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commissions' Regulations, 17 C.F.R. §§ 148.1, et seq. (2001), relating to or arising from this action and any right under EAJA to seek costs, fees and other expenses relating to or arising from this proceeding; (2) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (3) all rights of appeal from this Consent Order.

6.     The parties hereto also consent to the continued jurisdiction of the Court for the purpose of enforcing the terms and conditions of this Consent Order and for any other purposes relevant to this case.

7.     King agrees to cooperate fully with the Commission in its prosecution of the Complaint in this proceeding, in any ongoing investigations related to the subject matter of the

Complaint, and in all other proceedings arising from such investigations by, among other things: (1) responding promptly, completely, and truthfully to any inquiries or requests for information and otherwise cooperating fully with respect to discovery; (2) providing authentication of documents; (3) testifying completely and truthfully; and, (4) not asserting privileges under the Fifth Amendment of the United States Constitution in connection with any testimony King is asked to provide.

8.     King further affirms that she has read the Consent Order and agrees to entry of this Consent Order voluntarily, and that no promise or threat of any kind has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce her to consent to this Consent order, other than as set forth specifically herein.

## II.

## **FINDINGS OF FACT**

9.     The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason to delay.  The Court therefore directs the entry of an order for ancillary equitable relief, pursuant to § 6c of the Commodity Exchange Act, as amended, 7 U.S.C. § 13a-1 (2001), as set forth herein.

10.     This Court has subject matter jurisdiction over this action and the allegations in the Complaint pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2001).

11.     This Court has personal jurisdiction over King and King has acknowledged service of the Summons and Complaint and consented to the Court's jurisdiction over her.

12.     The Commission and King have agreed that this Court shall retain jurisdiction over each of them for the purpose of enforcing the terms of this Consent Order.

## THE PARTIES AND OTHER ENTITIES

13.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged with the responsibility for administering and enforcing the provisions of the Act, as amended, 7 U.S.C. §§ 1 *et seq.* (2001), and Regulations promulgated under it, 17 C.F.R. §§ *et seq.* (2001).

14.     Defendant Martin Brown, age 32, resides at 1307 S. Wabash #706, Chicago, Illinois 60605. At all relevant times, Brown was an employee of F. C. Stone, LLC ("Stone") and worked as a clerk in Stone's Futures Direct unit. Brown has never been registered with the Commission in any capacity. Brown is no longer employed at Stone. Brown and King live together.

15.     Relief Defendant Javette L. King resides at 1307 S. Wabash # 706, Chicago, Illinois 60605. King has never been registered with the Commission in any capacity.

16.     F.C. Stone, LLC is registered with the Commission as a futures commission merchant ("FCM") and is a member firm of the Chicago Board of Trade, the Chicago Mercantile Exchange and the National Futures Association. It is located at Suite 2600, 141 West Jackson Blvd., Chicago, Illinois 60604. As of July 1, 2000, it succeeded Saul Stone & Company LLC and assumed the rights and responsibilities of Saul Stone under all relevant customer account agreements. At all times, the term "Stone" shall refer to both Saul Stone & Company, LLC and F.C. Stone, LLC, as its successor and assignee.

## THE ALLOCATION SCHEME

17.     During the relevant time, while employed at Stone, the Defendants engaged in a fraudulent trade allocation scheme.

18.     In March 2000, King, at the direction of or by agreement with Brown, opened commodity interest account No. 18809 at Stone. Thereafter, the Defendants placed profitable trades into King's account and losing trades in victim accounts.

19.     In the at least eight months that the Defendants perpetrated the scheme, King's favored account at Stone received approximately $680,400 in funds that were obtained as a result of the Defendants' fraudulent scheme. Thereafter, the Defendants and King caused $556,000 of the funds to be transferred from King's favored account at Stone to King's bank account.

20.     The Defendants did not have specific authorization to place any trades in the victim accounts or written authorization to place trades in those accounts without specific authorization.

21.     King has no legitimate entitlement to or interest in the funds received from the Defendants' fraudulent conduct.

22.     King is required to disgorge the funds she received from Defendant's fraudulent conduct or the value of those funds that she may have subsequently transferred to third parties.

23.     By reason of the foregoing, King holds funds in constructive trust for the benefit of Stone customers who were victimized by Defendants' fraudulent scheme.

24.     As of October 27, 2000, King has returned only a portion of the illicitly obtained funds to Stone for the benefit of the customers whose accounts were victimized in the scheme.

### III.

### ORDER OF DISGORGEMENT

NOW THEREFORE, IT IS ORDERED THAT:

25.     DISGORGEMENT: King is ordered to disgorge $226,992 (Two Hundred Twenty Six Thousand Nine Hundred Ninety-Two Dollars), representing profits or proceeds she received

as a result of the acts and/or conduct alleged in the Complaint, plus pre-judgment interest thereon from October 27, 2000, to the date of this Order in the amount of $ /\ , and post-judgment interest thereon ("Disgorgement Obligation"). Pre-judgment interest is calculated at the underpayment rate established by the Internal Revenue Service, pursuant to 26 U.S.C. §662(a)(2). King shall pay post-judgment interest from the date of this Order until her Disgorgement Obligation is paid in full, at the Treasury Bill rate prevailing on the date of this Order, pursuant to 28 U.S.C. § 1961(a).

26. PAYMENT OF DISGORGEMENT: Payment of King's Disgorgement Obligation shall be made as follows:

> a. The balance of funds in account number 851-034201-4, held in the name of Javette L. King at Charter One, (formerly St. Paul Federal), 6700 W. North Ave., Chicago, Illinois 60707, shall be transferred with King's cooperation to an account designated by the Monitor, as described in subparagraph c below, within ten days of the date of this Order is entered by the Court. The Monitor shall distribute the payment in accordance with Attachment A and any applicable court Order. Based upon the amount of funds available, the Monitor may decide to defer distribution. The amount of such funds shall reduce King's Disgorgement Obligation on a dollar-for-dollar basis.

> b. King shall make an annual disgorgement obligation payment ("Annual Payment)" to an account designated by a monitor determined by the Commission ("the Monitor") of: (1) a percentage of her adjusted gross income (as defined by the Internal Revenue Code) earned or received by her during the previous calendar year, plus (2) all other cash receipts, cash entitlements or proceeds of non-cash assets received by her during the previous calendar year. The Annual Payment shall be made on or before July 31 of each calendar year starting in calendar year 2002 and continuing for ten years or until the Disgorgement Obligation is paid in full from any source, whichever occurs sooner. The ten year Annual Payment period shall run from January 1, 2001 through December 31, 2010. Annual Payments for a calendar year shall take place by July 31 of the following year. Therefore, the final Annual Payment for the year 2010 will occur on or before July 31, 2011.

> c. King agrees that the National Futures Association is hereby designated as the Monitor for a period of eleven years commencing January 1, 2001.

Notice to the Monitor shall be made to Daniel A. Driscoll, Esq., Executive Vice President, Chief Compliance Officer, or his successor, at the following address: National Futures Association, 200 West Madison Street, Chicago, Illinois 60606.

d.    King shall provide a sworn financial statement to the Monitor on June 30 and December 31 of each calendar year, starting June 30, 2002 and continuing through and including June 2011. The financial statement shall provide;

    i).    a true and complete itemization of all of her rights, title and interest in (or claimed in) any asset, wherever located, however and by whomever held;

    ii).    an itemization, description and explanation of all transfers of assets with a value of $1,000 or more made by or on behalf of her over the preceding six-month interval; and

    iii).    a detailed description of the source and amount of all her income or earnings, however generated.

King shall also provide the Monitor with complete copies of her signed federal income tax returns, including all schedules and attachments thereto (*e.g.*, IRS Forms W-2) and Forms 1099, as well as any filings she is required to submit to any state tax or revenue authority, for the preceding calendar year, on or before June 30 of each calendar year, or as soon thereafter as the same are filed, starting in calendar year 2002 and continuing for ten years or until all amounts due under this agreement are paid in full, whichever occurs first.

e.    If, during the same time period, King elects to file a joint tax return, she shall provide all documents called for by this paragraph 26, including the signed and filed joint tax return, plus a draft individual tax return prepared on IRS Form 1040 containing a certification by a licensed certified public accountant that the "Income" section (currently lines 7-22 of Form 1040) truly, accurately and completely reflects all of King's income, that the "Adjusted Gross Income" section truly, accurately and completely identifies all deductions that King has a right to claim, and that the deductions contained in the "Adjusted Gross Income" section are equal to or less than 50% of the deductions that King is entitled to claim on the joint tax return; provided however that King may claim 100% of the deductions contained in the "Adjusted Gross Income" section that are solely hers. Such individual tax return shall include all schedules and attachments thereto (*e.g.*, IRS Forms W-2) and Forms 1099, as well as any filing required to be submitted to any state tax or revenue authority.

f.  Based on the information contained in King's tax returns, King's sworn Financial Disclosure Statement and other financial records provided to the Commission, the Monitor shall calculate the Annual Payment to be paid by King for that year. Thereafter, the Monitor shall distribute the payment in accordance with Attachment A and any applicable court order. On or before June 30 of each year and starting in calendar year 2002, the Monitor shall send written notice to King with instructions to pay the Annual Payment on or before July 31 of that year to an account designated by the Monitor. If the Monitor determines that an Annual Payment is due, then the Monitor will increase the amount of the remaining Annual Payment by post-judgment interest calculated to the date of the payment based on the total remaining Disgorgement Obligation, pursuant to 28 U.S.C. § 1961. The Monitor shall then disburse any payment by King in accordance with Attachment A. If at the end of the ten year payment period, any amount of the Annual Payments has not been distributed, that amount shall instead be paid as provided in subparagraph g below.

g.  Based on the information contained in King's tax returns, King's sworn Financial Disclosure Statement and other financial records, the Monitor shall calculate the Annual Payment to be paid by King for that year. Thereafter, the Monitor shall distribute the payment in accordance with Attachment A and any applicable court order. On or before June 30 of each year and starting in calendar year 2002, the Monitor shall send written notice to King with instructions to pay the Annual Payment on or before July 31 of that year to an account designated by the Monitor. The Monitor shall then disburse any payment by King in accordance with Attachment A. When the Monitor determines that the victims listed in Attachment A have recovered their losses in full, the Monitor shall direct King to make each such Annual Payment by electronic funds transfer, or by U.S. postal money order, certified check, bank cashiers check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to Dennese Posey, or her successor, Division of Trading and Markets, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW Washington, D.C. 20581, under cover of a letter that identifies King and the name and docket number of the proceeding. King shall simultaneously transmit a copy of the cover letter and the form of payment to the Monitor and to the Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 1155 21st Street, NW, Washington, D.C. 20581.

27. <u>ANNUAL PAYMENT</u>: The Annual Payments shall be calculated as follows:

| Where Adjusted Gross Income Plus Net Cash Receipts Total: | Percent of total to be paid by King: |
| --- | --- |
| | |

| | |
|---|---|
| Under $25,000.00 | 0% |
| $25,000.00 up to and including $50,000.00 | 20% of the amount between $25,000.00 and $50,000 |
| $50,000.00 up to and including $100,000 | $5,000.00 (which represents 20% of the amount between $25,000.00 and $50,000.00) plus 30% of the amount between $50,000.00 and $100,000. |
| Above $100,000 | $20,000.00 (which represents 20% of the amount between $25,000.00 and $50,000.00 plus 30% of the amount between $50,000.00 and $100,000) plus 40% of the amount above $100,000. |

28. <u>Cooperation</u>: King shall cooperate fully and expeditiously with the Monitor and the Commission in carrying out all duties with respect to her Disgorgement Obligation payments. She shall cooperate fully with the Monitor and the Commission in explaining her financial income and earnings, status of assets, financial statements, asset transfers and tax returns, and shall provide any information concerning herself as may be required by the Commission and/or the Monitor. Furthermore, King shall provide such additional information and documents with respect thereto as may be requested by the Commission and/or the Monitor.

29. <u>Collateral Agreements</u>: King shall immediately notify the Commission if she makes or has previously made any agreement with any victim account holder obligating her to make payments outside of this order. King shall also provide immediate evidence of any payments made pursuant to such agreement in the manner required by Paragraph 33.

30. <u>Default</u>: Any failure by King to carry out any of the terms, conditions or obligations under any paragraph of this Consent Order shall constitute an Event of Default. If any Event of Default occurs the Commission (or its designee) shall be entitled to:

   a.   an order requiring immediate payment of any unpaid Annual Disgorgement Payment or, at the Commission's option, the entire unpaid balance, or any unpaid portion, of the Disgorgement Obligation set forth in Paragraphs 25 through 27 above; and/or

   b.   move the Court for imposition of all other available remedies, including, but not limited to, an order holding King in contempt for violation of this Order.

Upon the occurrence of an Event of Default based upon a claim or cause of action that King failed to make any Annual Disgorgement Payments when due, King will be barred from asserting any defense, including expiration of any statute of limitations, waiver, estoppel or laches, where such defense is based on the alleged failure of the Commission to pursue such claims or causes of action during the pendency of this civil action, during the negotiation of King's consent to this Order or while this Order remains in effect. The only issue that King may raise in defense is whether she made the Annual Disgorgement Payment as directed by the Monitor. Any motion by the Commission for entry of an order pursuant to this paragraph requiring payment of less than the full amount of the Disgorgement Obligation, set forth in paragraphs 25 through 27 above, or any acceptance by the Commission of partial payment of the Annual Disgorgement Payments made by King shall not be deemed a waiver of the Commission's right to require King to make further payments pursuant to the payment plans set forth above, or, in the event of a further Event of Default, a waiver of the Commission's right to require immediate payment of the entire remaining balance, or any unpaid portion, of the Disgorgement Obligation set forth in paragraphs 25 through 27 above.

31.   Reliance on Financial Disclosure:  Based upon the sworn representations of King contained in her Financial Disclosure Statement dated November 11, 2001, and other evidence provided by King regarding her financial condition, the Court is not ordering immediate payment of the full Disgorgement Obligation pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 and Rule

143.8 of the Commission's Regulations, 17 C.F.R. § 143.8. The determination not to order immediate payment of the full amount of disgorgement is contingent upon the accuracy and completeness of the Financial Disclosure Statement and other evidence provided by King regarding her financial condition. If at any time following the entry of this Consent Order, the Commission obtains information indicating that King's representations to the Commission concerning her financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may move this Court for an order requiring King to make immediate payment of her entire Disgorgement Obligation or of any portion thereof, the amount of which shall be determined by the Commission. In connection with any such motion, the only issues shall be whether the financial information provided by King was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made. In its motion, the Commission may move this Court to consider all available remedies, including, but not limited to ordering King to pay funds or transfer assets or directing the forfeiture of any assets and the Commission may also request additional discovery. King may not, by way of defense to such motion, challenge the validity of her consent to this Consent order, or contest any of the findings of fact or conclusions of law set forth in this Consent Order, assert that payment of the Disgorgement Obligation should not be ordered, or contest the amount of the Disgorgement Obligation to be paid. If in such motion the Commission moves for, and the Court orders, payment of less than the full amount of the Disgorgement Obligation, such motion will not be deemed a waiver of the Commission's right to require King to make further payment pursuant to the payment plans set forth above.

32.    Transfer of Assets:  King shall not transfer or cause others to transfer funds or other property to the custody, possession or control of any members of her family or any other person for the purpose of concealing such funds from the Court or the Commission until the disgorgement is paid in full.

## IV.

## MISCELLANEOUS PROVISIONS

33.    Notices:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requests, as follows:

Notice to Commission:

If prior to March 15, 2002, then to:

Regional Counsel
Division of Enforcement – Central Region
Commodity Futures Trading Commission
300 South Riverside Plaza, Suite 1600 N
Chicago, Illinois 60606

If after March 15, 2002, then to:

Regional Counsel
Division of Enforcement – Central Region
Commodity Futures Trading Commission
525 W. Monroe, Suite 1100
Chicago, Illinois 60606

Notice to King:

c/o Theodore Poulos, Esq.
Cotsirilos, Tighe & Streicker, Ltd.
33 N. Dearborn Street, Suite 600
Chicago, Illinois 60602

Notice to Monitor:

Daniel Driscoll
Vice President, Compliance
National Futures Assocation

200 West Madison Street
Chicago, Illinois 60606

In the event that King changes her residential or business telephone number(s) and/or address(es) at any time, she shall provide written notice of her new number(s) and/or address(es) to Theodore Poulos and to the Commission within ten (10) calendar days thereof.

34. <u>Entire Agreement and Amendments</u>: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

35. <u>Waiver</u>: The failure of any party hereto or of any victim account holder listed in Attachment A at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

36. <u>Successors and Assigns</u>: This Consent Order shall insure to the benefit of and be binding upon the successors, assigns, heirs, beneficiaries and administrators of the parties hereto.

37. <u>Acknowledgements</u>: Upon being served with copies of this Consent Order after entry by the Court, King shall sign acknowledgements of such service and serve such acknowledgments on this Court and the Commission within seven (7) calendar days.

38. <u>Invalidation</u>: If any provision of this Consent Order, or the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provision to any other person or circumstance shall not be effected by the holding.

14

39.    <u>Jurisdiction</u>:    This Court shall retain jurisdiction of this cause to assure compliance with this Consent Order and for all other purposes related to this action.

40.    <u>Lift of Asset Freeze</u>:  Upon entry of this Consent Order, all prior orders freezing King's assets are hereby declared moot.


ENTERED THIS _____ of _____, 2002.

MAR 2 7 2002

Hon. George W. Lindberg
United States District Court Judge


Consented to and
approved for entry by:


Javette King                                          Ava Gould, Trial Attorney
                                                      David A. Terrell, Senior Trial Attorney
                                                      Elizabeth M. Streit, Senior Trial Attorney
Theodore T. Poulous                                   Scott R. Williamson, Deputy Regional
Cotsirilos, Tighe & Streicker, LTD                    Counsel,
33 N. Dearborn St., Suite 1600
Chicago, IL 60602                                     Ava M. Gould
Attorney for the Defendant                            Commodity Futures Trading Commission
                                                      525 W. Monroe, Suite 1100
                                                      Chicago, Illinois 60661
                                                      Phone: (312) 596-0535
                                                      Fax:    (312) 596-0714